## GREEN v. PYNE.

(Court of Appeals of District of Columbia. Submitted October 27, 1922. Decided May 7, 1923.)

### No. 3793.

1. Master and servant ⬳101, 102(1)—Master owes duty to furnish reasonably safe place.

It is the duty of the master to provide for his servant a reasonably safe place in which to work.

2. Master and servant ⬳238(3)—Workman held negligent in adopting method of washing windows.

A workman who contracted to wash the windows of a residence once each month during a year, and who had had experience in such work and was permitted to select his own method of doing it, was contributorily negligent as a matter of law in washing the outside of a third-story window by standing on the sill and holding on to the upper sash only with one hand, without first investigating to see whether the lower sash, which he had raised, was in a safe position, so that he cannot recover for a fall when the lower sash came down on his hand, because it was not equipped with window cords, a fact which he could easily have ascertained.

3. Master and servant ⬳238(5)—Custom of standing on sill to wash windows does not justify disregard of inspection of window.

A custom by window washers to wash the outside of the windows by standing on the sill does not justify the adoption of that method, without investigating to see whether the condition of the window makes it safe to do so.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by John M. Green against Caroline Pyne to recover damages for personal injuries. Judgment for defendant, and plaintiff appeals. Affirmed.

T. Morris Wampler, of Washington, D. C., for appellant.
Henry E. Davis, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District in an action for personal injuries sustained by the plaintiff, appellant here, in falling from a third-story window sill while engaged in washing the window.

Plaintiff, whose "usual work was whitewashing fences, cleaning windows, and doing odd jobs," entered into a contract with the defendant in June of 1919 "to clean the windows of her residence, 1702 S. Street Northwest, Washington, D. C., once a month for a period of one year." The defendant reserved the right to discharge him at any time and specified the hours when the work should be performed. There was no evidence that she exercised any supervision over him or controlled in any way the manner in which he should perform the work.

During the last week of the month of June plaintiff washed defendant's windows for the first time—

"and on this occasion the witness raised the lower sash of the large window (from which he subsequently fell), and the same remained elevated while he stood on the outside of the window on the sill and washed the outside of the upper sash, which was fastened or nailed, so that he could not lower it, and that he experienced no difficulty with the window on this occasion."

On July 25th, following, plaintiff again undertook to wash the windows, and in washing the window in question—

"he raised the lower sash to a point so that the lower end of the lower sash was within six inches of the lower end of the upper sash, got on the outside of the window, standing on the sill, and holding to the lower end of the upper sash with one hand, and washing the glass with the other. While thus cleaning the window on the third floor front, having cleaned the two small windows on either side of the large window, all three constituting a bay window, and while cleaning the third or large window, the inside or lower sash, which was raised as aforesaid, fell with great force, striking his hand and breaking his hold on the lower end of the upper sash, the window continued to the base of the sill, and struck the sill with such force as to jar his feet, and that the breaking of his hold and the jarring when the window struck the sill caused him to fall from the window to the ground."

According to the plaintiff's testimony, at no time did he look to see whether there were any window cords on the inner or lower sash of the window. He stated, during his cross-examination, "that he had no difficulty in raising the inner or lower sash," and, when asked whether he could explain why the sash did not fall on the occasion when he first washed the window, replied that "luckily it stuck."

There was evidence tending to show that for several years, to the defendant's knowledge, there had been no cords in the window in question, and that plaintiff was not informed of that fact. The defendant contends that the action of the trial court in directing a verdict is sustainable upon two grounds: First, that upon the facts disclosed plaintiff was an independent contractor; and, second, that, assuming the relationship of master and servant to have existed, plaintiff was guilty of contributory negligence as matter of law. We do not find it necessary to discuss or decide the question presented by the first contention.

[1] Proceeding upon the theory that the relationship of master and servant existed, the rule that it is the duty of the master to provide for

his servant reasonably safe surroundings,—that is, a reasonably safe place in which to work (Carter v. McDermott, 29 App. D. C. 145, 10 L. R. A. [N. S.] 1103, 10 Ann. Cas. 601; Gibson v. Gernat, 50 App. D. C. 3, 267 Fed. 305)—is not determinative of the question whether the plaintiff, under the facts disclosed, was chargeable with contributory negligence.

[2] Plaintiff was an experienced window washer, and the evidence indicates that he was engaged as such by the defendant. Defendant was concerned solely with the result of the work, and not as to the manner or means of accomplishment. As to this the plaintiff was a free agent. When he approached this large third-story bay window it was for him to decide, after inspection, how he should do this particular part of his work, and what safeguards he should adopt for his own protection. He knew or should have known that to stand on a window ledge and depend for his safety upon a hold by one hand was in any aspect a dangerous undertaking. Certainly, before subjecting himself to the dangers inherent in such a situation, common prudence dictated that he should have made a careful inspection of the window, to the end that precautions be taken against the possibility of the window falling in the manner detailed. When he found that the upper sash was fastened, it was his duty, if he could not release it, to bring the matter to the attention of the defendant, that she might have it released. The discovery of its condition certainly did not justify him in exposing himself to the dangers incident to standing on the narrow window ledge, without first making sure that there would be no interference with his hold.

While plaintiff testified that he "did not look to see" whether there were any cords in the window, it is inconceivable that, had he permitted his senses to function, he would not have discovered the absence of the cords. The evidence shows that the lower sash of this window was almost four feet square, and, according to the plaintiff's testimony, it moved freely until near the top. On the first occasion, he not only raised this heavy window, but must have lowered it when his work was finished. It is common knowledge that such weights are attached to the cords as will properly balance the weight of the window and thus minimize the difficulty of raising and lowering it. The raising and lowering of this window on the first occasion and the raising of it again on the second occasion inevitably must have demonstrated to this plaintiff the absence of the cords and weights, or that something was wrong. There is no suggestion that the defendant directed or authorized the plaintiff, who presumably was in a far better position than she to appreciate the danger, thus to expose himself. He alone was responsible for his failure to exercise common prudence, and this conclusion is fully supported by the authorities.

In Haskell v. Kurtz Co., 181 Iowa, 30, 162 N. W. 598, L. R. A. 1917F, 881, the facts were almost identical with those here. The upper sash was so gummed with paint that it could not be lowered by the window washer without the use of some tool. Without consulting his employer, he got out upon the narrow window ledge, as did the plaintiff here, and the lower sash broke his hold, causing him to fall. The court ruled that the danger was so self-evident that no duty de-

volved upon the defendant to warn the plaintiff, and hence that the plaintiff was guilty of contributory negligence. The court said:

"This plaintiff is an adult of more than average intelligence. When he found a window that would not lower, no warning given in advance would have made that fact more patent. No skill or experience was required to bring home to him that he was unable to lower the sash. No advance warning would have made clearer than it was to any human being with ordinary faculties and power to reason that it was dangerous to meet the inability to lower the sash by stepping upon a six-inch ledge placed just below the second story of a building. * * * We are constrained to hold that one who finds that he cannot lower a window so that he may wash the same from inside the room, deliberately steps upon a ledge six inches wide, from which a fall to the street below will work great injury, with no precaution save the hold which plaintiff took, is in no position to recover for an injury which results, even though, had there been due care on the part of the employer, the plaintiff would have had no occasion to leave safety on the inside for clearly apparent danger on the outside. * * * There need be no warning against what should be evident to one possessed of ordinary intelligence."

The court carefully reviewed the authorities which fully sustained the position taken.

Brandon v. Globe Inv. Co., 108 Wash. 360, 184 Pac. 325, is another apposite case, wherein the facts are almost identical with those here, the only difference being that there the casing fitted so loosely that the window pulled through or by the casing, causing the plaintiff to fall. While there was no evidence in that case that the defendant knew of this supposed defect, the court placed its decision upon the ground that the plaintiff was guilty of contributory negligence, saying:

"The window was not made to serve the purpose to which the deceased was putting it; and if he desired to use it in that way, it was his absolute duty to make investigation and learn for himself whether or not it was of sufficient strength to permit him to safely make such use of it. The slightest investigation by him would have shown him whether he could safely do his work in the way he desired to do it. He could not blindly rely on the duty of the master to furnish him a reasonably safe window for the uses which he desired to make of it. He had a duty to himself; a duty to make investigation to see if the window was strong enough to serve his purpose. The law would not permit him to close his eyes to all defects, and then, if he be injured as a result of some defect which it was the duty of the master to remedy, recover damages of the master for such injury. Any such rule would allow the man injured to take advantage of his own wrong and would encourage carelessness."

As in the Iowa case, the court reviewed authorities which fully sustained the conclusion reached.

Again, in McLean v. Studebaker Bros. Co., 221 N. Y. 475, 117 N. E. 951, 1 A. L. R. 1551, where the facts were somewhat similar to those here, the court said:

"No duty rests on a master to secure the safety of his servant against a condition, or even defects, risks, or dangers, that may be readily observed by the reasonable use of the senses, having in view the age, intelligence, and experience of the servant. The plaintiff here was experienced and intelligent. His means of knowing the danger were the same as the defendant's. The risks and danger were * * * comprehensible through ordinary and reasonable care and inspection, and it was not the duty of the defendant to save him from them."

[3] It is further assigned as error that plaintiff was not permitted to prove that it is customary in the District of Columbia for men engaged in washing windows to stand on the sills outside. There are two answers to this contention. In the first place, it does not appear from the offer that the conditions approximated the conditions here. For aught that appears, a safety appliance may have been used. But we do not rest our ruling as to this contention upon this technical ground. No such custom would relieve the plaintiff of the duty, before thus exposing himself, to make the inspection or investigation we have held he should have made.

The judgment must be affirmed, with costs.

Affirmed.

SMYTH, Chief Justice (dissenting). The court puts aside the contention that Green was an independent contractor, and deals with the case on the assumption that he was an employé of the defendant.

Plaintiff said he was a common laborer, doing odd jobs, such as whitewashing fences and cleaning windows. Unless this shows he was an experienced window washer, there is nothing in the record to show it. He washed defendant's window for the first time in June, 1919, using the same method as he used a month later when he was injured. The window was in defendant's residence, and it is fair to infer that she observed the course he pursued on the first occasion, and thereby knew his method. Be that as it may, the evidence discloses that the defendant knew the condition of the window when she hired him to clean it. After the accident she declared, according to the testimony of two witnesses:

"That it had been a number of years since cords were in the window; * * * that she was always afraid of that window; * * * that she should have told the plaintiff that there were no cords in the window, and was sorry she had not told him."

This testimony was contradicted by the defendant; but, if the jury believed it, they would be warranted in finding that defendant was aware of the defect at the time she employed him. Yet she allowed him to go to work on the window without a word of warning. Surely the jury would be justified in finding her guilty of negligence.

The case, however, is affirmed on the basis that the plaintiff was guilty of contributory negligence. This implies negligence on the part of the defendant, because the plaintiff could not be guilty of contributory negligence, unless the defendant was negligent. The defense of contributory negligence is in the nature of a plea in confession and avoidance. Watkinds v. So. Pac. Ry. Co. (D. C.) 38 Fed. 711, 4 L. R. A. 239; Linforth v. San Francisco Gas & Electric Co., 156 Cal. 58, 103 Pac. 320, 19 Ann. Cas. 1230, and note. The question here being whether the plaintiff's case should have been submitted to the jury, I must assume that the testimony in his behalf is true. Riley v. McHarg, 47 App. D. C. 389. On that assumption there is no evidence of contributory negligence. His standing on the window sill while he washed the window does not prove it. Common experience tells us that windows are often washed in that way, and he offered to show that such

was the fact, but was not permitted to do so. If the window in the instant case was not defective, plaintiff would not have been injured. The defect was the proximate cause of the injury.

Modern legislation rejects contributory negligence as a bar to an action like this. Employers' Liability Act (35 Stat. 66 [Comp. St. §§ 8657–8665]). And we have said more than once that the trial court is not justified in taking a case from the jury on the score of contributory negligence save where the proof of such negligence is convincing beyond dispute. Barstow v. Capital Traction Co., 29 App. D. C. 362; District of Columbia v. Flagg, 42 App. D. C. 73. These cases are ignored by the majority.

But does not the court confuse contributory negligence with the assumption of risk? Yet they are different. Choctaw, etc. Railroad Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96. In the one there is negligence; in the other there is not. One sounds in tort; the other in contract. If the plaintiff knew, or should have known, of the defect, he assumed the risk. As we have shown, he did not know of it. Should he have known? The rule is that an employé is not required to inspect for the purpose of discovering defects.

"The servant," says the Supreme Court of the United States, in the Choctaw Case, just cited, "has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. * *. * This rule is subject to the exception that where a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation."

In a later case the same court used this language:

"Moreover, in order to charge an employé with the assumption of risk attributable to a defect due to the employer's negligence, it must appear, not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 102, 34 Sup. Ct. 229, 231 (58 L. Ed. 521).

The defect here was not open and obvious, it was hidden from him. He testified: "There were curtains at the window, and side curtains hanging at either side of the window frame." (This piece of testimony was overlooked by the court in making its statement of facts.) If it was his duty to search for defects, he could have pulled the curtains aside and observed the defect; but he was not required to do that. He had a right to assume, according to the decisions just cited, that there was no defect and to proceed on that theory.

None of the cases relied upon by the appellant is in point, because the facts in each are different from those in the instant case. In the Haskell Case it appeared that the employé took his stand outside of the window on a six-inch ledge. The court apparently proceeded upon the theory that it was contributory negligence for him to do so. There is no testimony in the case before us to show how wide the window sill was, and plaintiff, as we have seen, offered to show that it was customary to stand on the outside of a window when washing it.

In the Brandon Case the claim was that the casing did not properly fit, and that the window was loose and could with ease be pulled through the strips or stops intended to hold it in place. There was no evidence that the employer knew anything about this. For six or eight years the plaintiff's intestate had been accustomed to wash the windows several times each year. He was instantly killed in the accident. Nobody saw the occurrence, but the court concluded that the conditions were such that he must have been aware of them, and consequently held that he had assumed the risk—a position not warranted by the decisions of the Supreme Court which I have quoted. The McLean Case was decided, not on the basis of contributory negligence or assumption of risk, but on the theory that the employer was not negligent, a very different case from this.

In so far as any of those cases holds that it was the duty of the employé to investigate where the defect was not open and obvious, they are in conflict with the ruling of the Supreme Court in the Choctaw and Gila Valley cases, supra, and should not be followed.

For the foregoing reasons, I dissent.