**SNODGRASS v. COHEN et al.**
**Civ. A. No. 2071–50.**

United States District Court
District of Columbia.
March 21, 1951.

A. J. Spero and Ralph Stein, both of Washington, D. C., for plaintiff.

John R. Daily, of Washington, D. C., for defendants.

HOLTZOFF, Judge.

In this action for personal injuries the jury rendered a verdict for the plaintiff. The defendants move for a new trial on the ground that the verdict was against the weight of evidence and that the amount of damages awarded was excessive.

The defendants were the owners of an apartment house and contracted with one Schiff for the painting of the window frames outside of the building. The plaintiff is a painter who was hired by Schiff to do the work. Thus the relation of Schiff to the defendants was that of an independent contractor, while the plaintiff was an employee of Schiff and not of the defendants. In the course of his work the plaintiff was standing on top of a ladder resting against an outside wall of the house. While he was trying to lower one of the windows, the window collapsed and the plaintiff fell to

294

the ground, sustaining injuries that constitute the subject matter of this action.[1]

■ Since the relation of master and servant did not exist between the plaintiff and the defendants, and the plaintiff was an employee of an independent contractor, the basis of the defendants' liability is limited to a very narrow scope. The proprietor of real property, who procures work to be done thereon by an independent contractor, is under a duty to warn the contractor or the contractor's employees of the existence of any dangerous condition on the premises that may affect the safety of the workmen, if the owner is himself aware of the hazard, unless the condition is clearly obvious and visible, United States Cast Iron Pipe & Foundry Co. v. Sullivan, 5 Cir., 3 F. 2d 794, 796; Calvert v. Springfield Electric Light & Power Co., 231 Ill. 290, 83 N.E. 184, 14 L.R.A., N.S., 782. The decision in Green v. Pyne, 53 App.D.C. 271, 289 F. 929, 28 A.L.R. 616, on which defense counsel relies, is distinguishable, because in that case the court, by a vote of two to one, reached the conclusion that the defect complained of was patent and should have been observed by the workman if he had exercised due care.

■ The issue in the case at bar, therefore, was whether the defendants had fulfilled the limited duty imposed on them. The case was submitted to the jury on this theory. The jury's determination of this matter in the plaintiff's favor is sustained by the evidence. Parts of the deposition of the principal defendant taken before the trial were read in evidence by the plaintiff.[2] There this defendant admitted that he knew that the window sash had rotted and was falling out. In his testimony at the trial he denied that he knew that the window was in bad condition. He attempted to reconcile his conflicting statements by asserting that in his earlier testimony he

meant that some of the glass panes were broken and not that the window frames were rotted. Manifestly, the jury was not impressed by this effort. No reason is perceived why it should have been. There was also evidence supporting the conclusion of the jury that the defendants did not warn the contractor or his employees of the dangerous state of the windows and that this condition was the cause of the plaintiff's injuries.

■ The contention that the verdict of $16,000 is excessive merits serious consideration. The plaintiff's principal injury consisted in a permanent disability to his ankle, in addition to temporary injuries, pain and suffering. While he continues able to walk, there is a limitation of motion in his foot. At first blush the amount awarded by the jury may indeed seem generous and liberal. The point is not, however, whether the court, if it were the trier of the facts would have granted a smaller sum. The question is whether the amount is so excessive as to shock the conscience and lead to the conclusion that the jury was influenced by passion or prejudice, or whether the amount is so large as to be without support in the evidence, which, however, must be construed from the standpoint most favorable to the plaintiff, Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 29 L.Ed. 729; Washington Times Co. v. Bonner, 66 App.D.C. 280, 293, 86 F.2d 836, 110 A.L.R. 393; Boyle v. Bond, D.C.Cir., 187 F.2d 362; Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 407–408, 4 A.L. R.2d 1064; Garfield Aniline Works v. Zendle, 3 Cir., 43 F.2d 537.

■ In view of the shrinking purchasing power of money, we must drastically revise our views as to what constitutes a proper award in tort cases, in which damages are not subject to mathematical computation but are largely a matter of judgment within

---

1. In this case the employer failed to carry workmen's compensation insurance as required by law (33 U.S.C.A. § 904; D.C.Code, 1940 Ed. Title 36, Sec. 501). Irrespective of this circumstance, however, an action for damages may be maintained by or in behalf of the employee against a third party whose negligence caused the employee's injuries. The proceeds of such an action are distributed as prescribed by statute, 33 U. S.C.A. § 933.

2. Federal Rules of Civil Procedure, Rule 26(d) (2), 28 U.S.C.A.

the sound discretion of the jury. What might have been an excessive verdict twelve or fifteen years ago may be reasonable today. Juries appear to be conscious of this change of economic and social conditions. Generally, juries are apt to display a profound insight and keen discernment. Their conclusions are not to be treated lightly.

█ If the plaintiff's occupation was of a sedentary nature and the injury to his ankle did not affect his earning capacity, the contention that the verdict was excessive would probably have considerable cogency. This, however, is not the situation here. The plaintiff is a house painter by trade. As a result of the injury to his ankle he has lost his agility in climbing ladders and consequently is no longer able to pursue his chosen occupation. The result is stark tragedy for him. He is no longer able to follow his vocation. He lacks sufficient education to fulfill clerical duties. His economic status is completely uprooted and he and his family are supported to a large extent by welfare payments. He, himself, is able to earn only small sums of money by sporadically doing temporary odd jobs.

Even putting to one side all humanitarian factors and considering the matter solely from a pecuniary basis, the following calculations are supported by the evidence. At the time of the accident the plaintiff was 54 years old. His life expectancy under the mortality tables was over 18 years. Taking a conservative view, it was reasonable to assume that he had ahead of him about ten years of activity in his trade. His wages were $14 a day. Assuming, as is true generally in the construction industry, that the weather would have prevented him from working five days a week throughout the year, it would seem reasonable to compute his aggregate earnings on an average of about two hundred working days a year. On this basis his annual earnings would amount to about $2800. Since the accident he has been earning only about $400 a year. In other words, his loss of earning power may be said to amount to $2400 a year for ten years, or a total of $24,000. The present worth of this sum computed on the basis of three percent interest, is a little over $20,000. In addition, he has lost the opportunity of adding further increments to the old age insurance to which he will become entitled under the Social Security Act, 42 U.S.C.A. § 301 et seq. Moreover, he should receive some recompense for pain and suffering, as well as the discomfort and distress caused by being required to keep his leg in a plaster cast for a considerable period.

In the light of all the circumstances, the verdict is sustained by the evidence and is not excessive.

The defendant's motion for a new trial is denied.