**George N. TANNER, Individually and wife, Stephanie Tanner et al., Plaintiffs,**

v.

**ARMCO STEEL CORPORATION et al., Defendants.**

**Civ. A. No. 71-H-1232.**

United States District Court,
S. D. Texas,
Galveston Division.

March 8, 1972.

L. A. Greene, Jr., Houston, Tex., for plaintiffs.

B. D. McKinney, of Baker & Botts, Houston, Tex., for Ethyl Corp., Olin Corp., Phosphate Chemicals, Inc., Reich-

hold Chemicals, Inc., Rohn & Haas Co., Tenneco Chemicals, Inc. and U. S. Ply-Wood-Champion Papers, Inc., defendants.

Charles L. Chester, of Andrews, Kurth, Campbell & Jones, Houston, Tex., for Armco Steel Corp. and Tenn-Tex Alloy Corp. of Houston, defendants.

William Key Wilde, of Bracewell & Patterson, Houston, Tex., for Parker Brothers & Co., defendant.

Ben H. Rice, III of Vinson, Elkins, Searls & Smith, Houston, Tex., for Crown Central Petroleum Corp., defendant.

John H. Boswell, of Boswell, O'Toole, Davis & Pickering, Houston, Tex., for Lubrizol Corp., defendant.

L. S. Carsey, of Fulbright, Crooker & Jaworski, Houston, Tex., for Merichem Co. and Pennwalt Corp., defendants.

C. E. Nadeau, J. A. Evans, and W. D. Maer, Houston, Tex., for Shell Chemical Corp. and Shell Oil Co., defendants.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Plaintiffs, residents of Harris County, Texas, bring this action to recover for injuries allegedly sustained as a result of the exposure of their persons and their residence to air pollutants emitted by defendants' petroleum refineries and plants located along the Houston Ship Channel. It is asserted that plaintiff George W. Tanner, as a proximate result of these emissions, has suffered pulmonary damage with consequent medical expenses and loss of income to himself and his family. By way of remedy, it appears from the rather prolix complaint that plaintiffs pray "to recover their damages from the Defendants, jointly and severally, for their personal injuries, past and future medical expenses, pain and suffering, loss of services, mental anguish, loss of support, damages to the homestead and lands of the Tanners, general damages, puntative (sic) damages and all other damages allowed by law, in the combined amount of FIVE MILLION DOLLARS."

As this action between private parties would appear to sound in tort, and as diversity of citizenship has not been pleaded, the threshold question of federal jurisdiction immediately arises. Arguing that such jurisdiction is lacking and that a claim upon which relief can be granted has not been stated, sixteen defendants have filed motions to dismiss. Rule 12(b) (1) and (6), Fed.R.Civ.P. Defendant Crown Central Petroleum Corporation has taken the same position by way of answer. Plaintiffs have responded in opposition to dismissal. To the extent that plaintiffs' response, accompanied by affidavit, has introduced material dehors the pleadings, the motions shall be treated as prayers for summary judgment, as authorized by Rule 12(b), Fed.R.Civ.P. The issues have been thoroughly briefed and the matter is ripe for disposition.

In their jurisdictional statement, citing a potpourri of federal constitutional and statutory provisions, plaintiffs purport to construct a claim upon the following foundations: (1) the Constitution of the United States "in its entirety"; (2) the Due Process Clause of the Fifth Amendment; (3) the Ninth Amendment; (4) the Fourteenth Amendment in conjunction with the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343; (5) the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq.; (6) and, finally, the general federal question jurisdictional statute, 28 U.S.C. § 1331 (a). All of the foregoing shall now be considered seriatim.

I. The allusion in the complaint to the Federal Constitution "in its entirety" is not a plain statement of the ground upon which the Court's jurisdiction depends, and is therefore insufficient pleading under Rule 8(a) (1), Fed.R.Civ. P.

II. Plaintiffs next assert that their claim arises under the Due Process Clause of the Fifth Amendment to the Federal Constitution, and is therefore cognizable in this Court. The contention is without merit. It is well settled that

the Fifth Amendment operates only as a restraint upon the National Government and upon the States through the Fourteenth Amendment, but is not directed against the actions of private individuals such as defendants. Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L. Ed. 196 (1896); Corrigan v. Buckley, 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969 (1926); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). It is not alleged in the instant complaint that the Federal Government is involved in the activity complained of. In their responsive brief, plaintiffs do assert that the Federal Government has advanced funds to the State of Texas and City of Houston for the purpose of antipollution efforts. The relevance of this is not immediately apparent; however, taken as true, it clearly does not amount to federal complicity or participation in the alleged transgressions of the defendant private corporations, and it just as clearly will not support a Fifth Amendment claim.

III. Plaintiffs next seek solace in the Ninth Amendment, and concede on brief that this is a pioneering enterprise:

> This case is believed to be unique in that counsel for the Tanners is not aware of any other cases that have sought damages for personal injuries caused by the air pollution in the United States District Courts based upon the premise that the right to a healthy and clean environment is at the very foundation of this nation and guaranteed by the laws and Constitution of the United States. Plaintiffs maintain that their right not to be personally injured by the actions of the Defendants and their right to non-interference with their privacy and the air that they breathe are protected by the Ninth Amendment.

Responsive Brief of Plaintiffs, at p. 1.

■ Since its promulgation, the Ninth Amendment has lain largely quiescent, its most ambitious sortie being in the form of a concurrence in Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (concurring opinion of Mr. Justice Goldberg). The parties have cited and the Court has found no reported case in which the Ninth Amendment has been construed to embrace the rights here asserted. Such a construction would be ahistorical and would represent essentially a policy decision. In effect, plaintiffs invite this Court to enact a law. Since our system reserves to the legislative branch the task of legislating, this Court must decline the invitation. The Ninth Amendment, through its "penumbra" or otherwise, embodies no legally assertable right to a healthful environment. Environmental Defense Fund, Inc. v. Corp of Engineers, 325 F.Supp. 728, 739 (E.D.Ark.1971); cf. Red Lion Broadcasting Co. v. Federal Communications Commission, 127 U.S. App.D.C. 129, 381 F.2d 908, 925 (1967), aff'd 395 U.S. 367, 89 S.Ct. 1794, 23 L. Ed.2d 371 (1967).

■ IV. Plaintiffs also contend that this action is entertainable by reason of the Fourteenth Amendment in conjunction with the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343. The Supreme Court of the United States, in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), has recently defined plaintiffs' task:

> The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law".

398 U.S. at 150, 90 S.Ct. at 1604. Therefore, it is clear that a sufficiently stated claim under section 1983 must embrace two elements properly alleged: (1) a constitutional deprivation, and (2) state action. On brief, all parties have devoted

considerable attention to state action, the second requisite.

■■ This Court is persuaded that plaintiffs have not alleged the quantum of state or municipal regulatory involvement necessary to clothe defendants with the mantle of the State for the purposes of Section 1983. See T. W. Guthrie v. Alabama By-Products Company, 328 F. Supp. 1140 (N.D.Ala.1971), and cases cited therein at 1143, n. 7. However, it is unnecessary to dwell upon the point at length. For, assuming arguendo that state action were present, the fact remains that the first requisite of a Section 1983 suit—constitutional deprivation—has not been satisfied.

Taking as true all factual allegations in the complaint, plaintiffs have failed to allege a violation by defendants of any judicially cognizable federal constitutional right which would entitle them to the relief sought. Once again, the parties have cited and the Court has found no reported case which persuasively suggests that the Fourteenth Amendment is susceptible to the interpretation urged. Although there has been something of a boom recently in what Judge Seals of this Court has described as "grandiose claims of the right of the general populace to enjoy a decent environment", Bass Anglers Sportsman's Society of America v. United States Plywood-Champion Papers, Inc., 324 F.Supp. 302, 303 (S.D. Tex.1971), such claims "have been more successful in theory than in operation." P. D. Rheingold, A Primer on Environmental Litigation, 38 Brooklyn L.Rev. 113, 126 (1971). In view of the dearth of supportive authority, this Court must decline "to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2nd Cir. 1943) (L. Hand, J., dissenting), cf. Environmental Defense Fund, Inc. v. Corps of Engineers, supra, 325 F.Supp. at 739.

First, there is not a scintilla of persuasive content in the words, origin, or historical setting of the Fourteenth Amendment to support the assertion that environmental rights were to be accorded its protection. To perceive such content in the Amendment would be to turn somersaults with history. For, as the Congressional sponsor of a proposed federal environmental amendment recently observed:

We are frank to say that such a provision to the Constitution would have been meaningless to those attending the Constitutional Convention in Philadelphia almost 200 years ago. Indeed, this amendment would have been altogether unpersuasive twenty years ago, although the handwriting was then visible on the wall, if one cared to look for it.

Remarks of Representative Richard L. Ottinger of New York, Cong. Rec. 17116 (1968), quoted at R. H. Platt, Toward Constitutional Recognition of the Environment, 56 A.B.A.J. 1061 (1970).

Second, it is apparent that nowhere in the Fourteenth Amendment—or its "incorporated" amendments—can be found the decisional standards to guide a court in determining whether the plaintiffs' hypothetical environmental rights have been infringed, and, if so, what remedies are to be fashioned. Such a task would be difficult enough with the guidance of a statute, but to undertake it in the complete absence of statutory standards would be simply to ignore the limitations of judicial decisionmaking.

Third, from an institutional viewpoint, the judicial process, through constitutional litigation, is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes. Furthermore, the inevitable trade-off between economic and ecological values presents a subject matter which is inherently political, and which is far too serious to relegate to the ad hoc process of "government by

lawsuit" in the midst of a statutory vacuum.

Finally, to the extent that an environmental controversy such as this is presently justiciable, it is within the province of the law of torts, to wit: nuisance. Cf. Trueheart v. Parker, 257 S.W. 640 (Tex.Civ.App.—San Antonio 1923, no writ); King v. Columbian Carbon Co., 152 F.2d 636 (5th Cir. 1945). There would seem little good reason in law or policy to conjure with the Fourteenth Amendment and Section 1983 for the purpose of producing the wholesale transformation of state tort suits into federal cases. In any event, if such a result is deemed desirable in order to cope with pollution on a nationwide scale, then it should be accomplished by Congress through legislation, and not by the courts through jurisdictional alchemy. Therefore, this Court must follow Guthrie v. Alabama By-Products Co., supra, where the Court, in dismissing a similar pollution suit, observed that several bills have been introduced to challenge conduct alleged to result in environmental pollution. From this, Chief Judge Lynne of the Northern District of Alabama quite reasonably concluded that:

> Though this circumstance may be only faintly persuasive, it does indicate that the sponsors of these bills believe that the right to maintain such suits in federal court is not provided by existing legislation. This Court is firmly of the opinion that if plaintiffs are to be allowed to bring private damage suits for injuries traditionally local in nature and already covered by local statutory and common law, additional federal legislation is imperative. Such authority cannot be found in the existing law.

328 F.Supp. at 1149.

For the foregoing reasons, this Court holds that no legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution. As the United States Supreme Court recently observed in rejecting a similarly imaginative constitutional claim, "the Constitution does not provide judicial remedies for every social and economic ill." Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972). It follows, of course, that a claim under Section 1983 has not been stated and subject matter jurisdiction under 28 U.S.C. § 1343 has not been invoked.

V. Next, plaintiffs urge this Court to find an implied civil damage remedy in certain provisions of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. In this, the Court is again apparently invited to break new ground, for no case has been cited in which such a remedy was inferred. The absence of such authority is understandable. By its terms, the statute is directed only to the agencies and instrumentalities of the Federal Government, with a primary purpose being full disclosure of the environmental consequences of federal governmental activities. It follows that plaintiffs may derive from the statute no private cause of action against these private defendants. For the sake of thoroughness, however, each section of the Act cited by plaintiffs shall be separately considered.

(a) As to 42 U.S.C. § 4321, this is merely a preamble to the Act, in which Congress declares its purpose to encourage harmony between man and his environment, to promote efforts for the prevention of environmental damage, to enrich man's understanding of his environment, and to establish a Council on Environmental Quality. In so doing, Congress said nothing of rights or remedies. As it embodies no prescriptive command and creates no duties or liabilities, this section of the statute clearly cannot be made to embrace a private cause of action. *Compare:* J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916); Kar-

don v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946).

(b) In their jurisdictional statement, plaintiffs also cite 42 U.S.C. § 4331(a) and (b) as supportive of this action. There is contrary authority on the point, and we need look no further than Environmental Defense Fund, Inc. v. Corps of Engineers, supra, in which the Court held that these sections of the statute create no substantive private rights. The well-reasoned opinion deserves quotation at some length:

Plaintiffs contend that NEPA creates some "substantive" rights in addition to its procedural requirements. They base this contention on the language contained in § 101 of the Act. Although the Court may be oversimplifying their position in this respect, essentially they claim that the Act creates rights in the plaintiffs and others to "safe, healthful, productive, and esthetically and culturally pleasing surroundings;" and to "an environment which supports diversity and variety of individual choice," and "the widest range of beneficial values." See § 101(b). The Court disagrees.

Section 101(a) takes note of the environmental problems facing the nation and then declares it to be the policy of the federal government to use all practical means "to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans." In order to carry out this policy, § 101(b) declares it to be the "continuing responsibility of the Federal Government to use all practicable means * * * to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may—" attain certain stated objectives, including those, quoted above, which plaintiff contend create substantive rights.

The Act appears to reflect a compromise which, in the opinion of the Court, falls short of creating the type of "substantive rights" claimed by the plaintiffs. Apparently the sponsors could obtain agreement only upon an Act which declared the national environmental policy. This represents a giant step, but just a step. It is true that the Act required the government "to improve and coordinate Federal plans, functions, programs, and resources," *but it does not purport to vest in the plaintiff, or anyone else, a "right" to the type of environment envisioned therein.*

In the instant case it is clear that the damming of the Cossatot will reduce "diversity and variety of individual choice." It is apparently plaintiffs' view that upon the basis of such a finding the Court would have the power, and duty, ultimately and finally to prohibit the construction of the dam across the Cossatot. No reasonable interpretation of the Act would permit this conclusion. If the Congress had intended to leave it to the courts to determine such matters; if, indeed, it had intended to give up its own prerogatives and those of the executive agencies in this respect, it certainly would have used explicit language to accomplish such a far-reaching objective.

325 F.Supp. at 755 (emphasis added). Therefore, as Sections 4331(a) and (b) create no private rights, they obviously imply no private remedies.

(c) Plaintiffs' reliance upon 42 U.S.C. § 4331(c) is similarly misplaced. This section provides only that "(t)he Congress recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment." Like the language of Section 4321, these words are almost precatory in nature. Had the Congress intended to create a positive and enforceable legal right or duty, it would have said so, and would not have limited itself to words of entreaty. In the absence of any clear statement, this Court must assume that no such inten-

tion existed. Although such a reading stands by itself as the only plausible construction, it is interesting to note that it is supported by the legislative history of the provision in question. Originally, the Senate version, Senate Bill 1075, provided that "(t)he Congress recognizes that each person has a *fundamental and inalienable right to a healthful environment.* . . ." (emphasis added). However, these strong words did not survive the conference committee, where they were deleted lest they be interpreted to create legal consequences which the Congress did not intend. In the words of the Conference Report:

> Section 101(c) of the conference substitute states that "Congress recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment". The language of the conference substitute reflects a compromise by the conferees with respect to a provision in the Senate bill (but which was not in the House amendment) which stated that Congress recognizes that "each person has a fundamental and inalienable right to a healthful environment . . ." The compromise language was adopted because of doubt on the part of the House conferees with respect to the legal scope of the original Senate provision.

See Conference Report No. 91-765, 1969 U.S.Code Cong. & Admin.News pp. 2767, 2768. This "doubt" was resolved by stripping the Senate bill of the language which might arguably have been construed as creating a legally enforceable right to a "healthful environment". As the Congress took assiduous care to foreclose the possibility of such an interpretation, this Court is obviously powerless to adopt it. From this it follows that no claim upon which relief can be granted has been stated under 42 U.S.C. § 4331(c).

 VI. Finally, in their jurisdictional statement, plaintiffs cite 28 U.S.C. § 1331, conferring upon federal district courts original jurisdiction of suits arising under the Constitution, laws, and treaties of the United States. It is well settled that this provision is operative only when "a right of immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." Gully v. First National Bank of Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed 70 (1936). Jurisdiction exists in this Court for the purpose of determining whether a cause of action has been stated. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). For the reasons expressed previously, plaintiffs have not stated a federal claim upon which relief can be granted. Therefore, the action must be dismissed. Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

Accordingly, for the foregoing reasons, this action must be dismissed because of plaintiffs' failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

Judgment shall enter for the defendants.