**O. D. HAGEDORN** and his wife, Leonise Hagedorn, as Individuals and as next friend for their minor child, Jamie Hagedorn, and on behalf of all those similarly situated, Plaintiffs,

v.

**UNION CARBIDE CORPORATION**, a New York corporation, et al., Defendants.

Civ. A. No. C–70–8–C.

United States District Court, N. D. West Virginia.

Aug. 24, 1973.

E. D. McDonald, John L. Boettner, Jr., Appalachian Research & Defense Fund, Inc., Charleston, W. Va., for plaintiffs.

Willis O. Shay, Herbert G. Underwood, Steptoe & Johnson, Clarksburg, W. Va., Homer A. Holt, Jackson, Kelly, Holt & O'Farrell, Herbert E. Jones, Carl G. Beard, Asst. Attys. Gen., Charleston, W. Va., James F. Companion, U. S. Atty., Wheeling, W. Va., for defendants.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

The plaintiffs charge that emissions from Union Carbide Corporation's plant in Anmoore, West Virginia, are fouling the air in that community. The plaintiffs, who are residents of Anmoore, sued as individuals, as next friend for a minor daughter and on behalf of a class initially alleged to be all citizens of West Virginia.[1] Defendants are Union Carbide and various state and federal agen-

---

1. Plaintiffs ultimately acknowledged that the class should consist of no more than the "approximately 950" persons living "within the immediate area and surrounding vicinity of Anmoore, West Virginia." (Motion of Plaintiffs for Class Action, filed August 16, 1972.)

cies and officials allegedly responsible for combating air pollution.

Recent commentary on environmental law has prompted the Court, in keeping with Rule 12(h)(3), F.R.Civ.P., to take a fresh look at whether plaintiffs may seek redress in this court.[2]

The Court's inquiry is directed to the amended complaint, which was filed April 13, 1972. The amended complaint is complete in itself and makes no reference to the original complaint; and plaintiffs' counsel have advised that the amended complaint was intended to completely supersede the original.[3]

Plaintiffs say that Union Carbide's smokestacks belch "dirt, graphite, dust and particles, gases, fumes and other substances," amounting to a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes." (Amended Compl., pars. 8, 11(B).) They urge that this (a) violates their Constitutional right to a decent environment, (b) violates West Virginia's air pollution control laws (W.Va.Code § 16–20–2 et seq.), and (c) constitutes common law trespass and nuisance.

In addition to Union Carbide, the West Virginia Air Pollution Control Commission ("State Commission"), its chairman, and director are named defendants, allegedly because a "so-called 'Air Pollution Abatement Program'" imposed by the State Commission upon Union Carbide amounts to nothing more than a state license for Carbide to pollute. (Amended Compl., par. 15.) Also named are the Department of Health, Education, and Welfare ("HEW"), the National Air Pollution Control Administration ("NAPCA"), and its director. The NAPCA is charged with failure to designate an air quality control region for plaintiffs' protection and with failure to force the State Commission "to develop an effective implementation plan for air pollution control" for the Anmoore, West Virginia, area. (Amended Compl., par. 21.) [4]

Plaintiffs rely upon the following assortment of laws in an effort to fix jurisdiction in this Court: (1) the United States Constitution, Amendments 5, 9 and 14; (2) the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3) and (4); (3) the provisions relating to judicial review of federal agency action, 5 U.S.C. §§ 701–706; (4) the general federal question jurisdictional statute, 28 U.S.C. § 1331; (5) the diversity jurisdictional statute, 28 U.S.C. § 1332; and (6) the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Each of these will be weighed in turn.[5]

---

2. *E. g.*, Recent Developments in Environmental Law, 14 B.C.Ind. & Com.L.Rev. .575 (1973).

3. Transcript of February 16, 1972, conference, at 32; *see* 3 J. Moore, Federal Practice ¶ 15.08 [7], at 939 (2d ed. 1972).

4. In the amended complaint (pars. 4(D) and 20), the plaintiffs continue to cite the Air Quality Act of 1967 in accusing the federal defendants. However, on December 31, 1970, before the amended complaint was tendered and filed, the 1967 Act was revised drastically and thereafter cited as the Clean Air Act. (42 U.S.C. § 1857 et seq.) Moreover, on December 2, 1970, the President of the United States, with the acquiescence of Congress (*see* 5 U.S.C. § 906), created the Environmental Protection Agency and transferred to the Administrator of that agency all air pollution control functions previously exercised by the Secretary of HEW and HEW's component, NAPCA. Reorg. Plan No. 3 of 1970, §§ 1 and 2; 35 F.R. 15623. Plaintiffs apparently overlooked or neglected these changes in proffering the amended complaint.

5. On February 16, 1972, an additional twenty-eight residents of Anmoore were allowed to intervene as plaintiffs in this case. It is unnecessary to weigh separately the jurisdictional contentions of the intervenors, because their complaint proceeds upon jurisdictional theories identical to those relied upon by the original plaintiffs.

On September 21, 1972, fifteen of the intervenors moved to be dropped as plaintiffs, stating that "they no longer wish to pursue [the] action against defendants." (Motion to Drop Plaintiffs-Intervenors, filed September 21, 1972.)

## I. The Constitutional claims.

The plaintiffs contend that the acts complained of deprive them of the following rights guaranteed by the Constitution:

"(A) The right to breathe clean air and live in a decent environment including the fundamental human right of survival granted and protected by the Ninth Amendment.

"(B) The right to their life, health and property and to full use and enjoyment thereof granted and protected by the Fifth Amendment.

"(C) The right to equal protection under the laws." (Amended Compl., par. 23.)

These and similar claims have been widely advanced, but regularly rejected by the federal courts. Indeed, the Fourth Circuit in Ely v. Velde, 451 F.2d 1130 (1971), emphatically "decline[d] . . . to elevate to a constitutional level" (*Id.* at 1139) the claimed " 'right to be protected from unnecessary and unreasonable environmental degradation and destruction' " (321 F.Supp. 1088 at 1091). Speaking for the Court, Judge Soboloff said:

"While a growing number of commentators argue in support of a constitutional protection for the environment, this newly-advanced constitutional doctrine has not yet been accorded judicial sanction. . . ." (451 F.2d at 1139.)

■ This Court considers itself bound by the clear language of Ely v. Velde, which is buttressed by the heavy weight of the emerging case law.

In Environmental Defense Fund v. Corps of Eng. of United States Army, 325 F.Supp. 728 (E.D.Ark.1971), plaintiffs, in seeking to enjoin the damming of an Arkansas river, relied upon the Fifth, Ninth and Fourteenth Amend-ments in much the same language as plaintiffs here. The court declared that it was not within the province of a district court to bestow Constitutional protection to the environment:

"Those who would attempt to protect the environment through the courts are striving mightily to carve out a mandate from the existing provisions of our Constitution. . . . Such claims, even under our present Constitution, are not fanciful and may, indeed, some day, in one way or another, obtain judicial recognition. But, as stated by Judge Learned Hand in Spector Motor Serv., Inc. v. Walsh, 139 F.2d 809 (2 Cir., 1944):

" 'Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant.'

"The Ninth Amendment may well be as important in the development of constitutional law during the remainder of this century as the Fourteenth Amendment has been since the beginning of the century. But the Court concludes that the plaintiffs have not stated facts which would under the present state of the law constitute a violation of their constitutional rights. . . ." (325 F.Supp. at 739.)

■ Plaintiffs' allegations of personal injury do not lift their claims to legally cognizable proportions under the Constitution. Tanner v. Armco Steel Corporation, 340 F.Supp. 532 (S.D.Tex. 1972). In *Tanner,* a case with a striking likeness to this one, the plaintiff-family alleged specific injuries from air pollutants from defendants' petroleum refineries and plants. The husband claimed that the pollution caused him pulmonary damage with consequent medical expense and loss of income. Damage to plaintiffs' homestead and lands was also alleged.[6] The *Tanner* plaintiffs

---

6. Plaintiffs here allege that Union Carbide's pollution mars their property, thereby causing additional cleaning, maintenance and repair. They also claim that their daughter suffers from a respiratory ailment which is aggravated by the pollution. (Amended Compl., pars. 9–12.)

sought relief under the Fifth, Ninth and Fourteenth Amendments. The court, however, rejected the Constitutional claims, holding that:

"No legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution. As the United States Supreme Court recently observed in rejecting a similarly imaginative constitutional claim, 'the Constitution does not provide judicial remedies for every social and economic ill.' Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 874, 31 L. Ed.2d 36 (1972)." (*Id.* at 537.)

█ Accordingly, the amended complaint here does not present a controversy arising under the Fifth, Ninth or Fourteenth Amendments to the Constitution.

## II.  42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4).

█ Plaintiffs also contend that this action involves claims cognizable under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for which jurisdiction is conferred by 28 U.S.C. § 1343. They assert that the State Commission's sanctioning of Carbide's "so-called 'Air Pollution Abatement program' amounts to a state license to pollute" and is sufficient state involvement to constitute "state action" for the purposes of section 1983. (Amended Compl., par. 16.)

The Fourth Circuit has recently discussed the requisites for invoking section 1983:

"The Supreme Court has said that the presence of two elements is necessary in order to maintain successfully a section 1983 action. First, the plaintiff must have suffered deprivation of a right secured by the Constitution and laws of the United States; and second, this deprivation must be the result of action taken by the defendant 'under color of [state] law.'

See Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed. 2d 142 (1970)." Johnson v. Capitol City Lodge No. 74, Frat. Ord. of Police, 477 F.2d 601, 602 (4th Cir. 1973).

As indicated in the discussion of plaintiffs' constitutional claims, the acts attributed to defendants are not violations of any judicially cognizable Federal Constitutional right. Thus, the first requisite of a section 1983 suit—Constitutional deprivation—has not been satisfied. Since no claim has been stated under section 1983, subject matter jurisdiction cannot be invoked under 28 U.S. C. § 1343.

## III.  5 U.S.C. §§ 701–706.

In the jurisdictional paragraphs of the amended complaint, plaintiffs list 5 U.S.C. §§ 701–706 (the Administrative Procedure Act) and state that, in part, "[t]his is an action . . . [t]o review the agency determinations of Defendant, NATIONAL AIR POLLUTION CONTROL ADMINISTRATION." (Amended Compl., pars. 1 and 2.) [7] The charging allegations against the federal defendants are restricted to two short paragraphs:

"20.  Upon information and belief, Defendant NAPCA is charged under the Air Quality Control Act of 1967, with the duty to investigate sources of pollution, to designate air quality control regions and to review and approve West Virginia air quality standards.

"21.  Upon information and belief, Plaintiffs allege that the Defendant NAPCA has arbitrarily failed and will continue to fail to designate an air quality control region for the protection of the Plaintiffs and further have failed to require Defendant COMMISSION to develop an effective implementation plan for

---

**7.** As indicated previously, the NAPCA was defunct by the time the amended complaint was tendered.

air pollution control in and around Plaintiffs area of residence."[8]

■■ The rule governing the pleading of jurisdiction in federal court requires more than simply alleging that jurisdiction exists, or citing a federal statute. The complaint should set out clearly the facts necessary to support jurisdiction. Bowman v. White, 388 F.2d 756 (4th Cir.), cert. denied, 393 U.S. 891, 89 S.Ct. 214, 21 L.Ed.2d 172 (1970); Fountain v. New Orleans Public Service, Inc., 265 F.Supp. 630, 632 (E.D.La.1967); Rule 8(a), F.R.Civ.P.[9] The scant allegations, set forth above, concerning the federal defendants do not comply with Rule 8(a). Plaintiffs have left to the Court the task of inquiring whether it has subject matter jurisdiction under the Clean Air Act. *See* Rule 12(h)(3), F.R.Civ.P.; Carignan v. United States, 48 F.R.D. 323, 326 (D. Mass.1969).

■■ The Administrative Procedure Act ("APA") alone does not confer jurisdiction on this Court. Zimmerman v. United States Government, 422 F.2d 326 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565, reh. denied, 400 U.S. 855, 91 S.Ct. 26, 27 L.Ed.2d 93 (1970). And the APA definitely does not sanction judicial review where a relevant statute precludes it. 5 U.S.C. § 701(a) (1); Caulfield v. United States Department of Agriculture, 293 F.2d 217 (5th Cir. 1961), cert. dismissed, 369 U.S. 858, 82 S.Ct. 946, 8 L.Ed.2d 16 (1962); *cf.* Utah International, Inc. v. Environmental Protection Agency, 478 F.2d 126 (10th Cir. 1973).

Here the Court must turn to the Clean Air Act, which contains its own jurisdictional provisions.[10] The Act permits judicial review in the district courts of particular action by the EPA Administrator, but limits review of some of the Administrator's acts to the United States Courts of Appeals. 42 U.S.C. §§ 1857h-2, 1857h-5.

Section 1857h-2(a), insofar as pertinent to this case, provides:

"[A]ny person may commence a civil action on his own behalf—

\* \* \* \* \* \*

"(2) against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

"The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties . . . to order the Administrator to perform such act or duty. . . ."[11]

Section 1857h-5(b) provides:

"(1) . . . A petition for review of the Administrator's action in approving or promulgating any [State] implementation plan [for meeting air quality standards] under section 1857c-5 of this title or section 1857c-6(d) of this title may be filed only in the United States Court of Appeals for the appropriate circuit . . . .

---

8. Plaintiffs lifted these allegations verbatim from their original complaint.

9. Rule 8(a) requires that a pleading "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ."

10. The Air Quality Act of 1967, the 1970 Clean Air Act's predecessor, made no provision for judicial review. However, the 1970 Act was passed after this action was commenced and before the amended complaint was offered and filed. An intervening statutory change, partic-

ularly one affecting jurisdiction, is applicable to pending cases. Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952); United States v. Alabama, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960). Accordingly, the Clean Air Act of 1970 controls here.

11. Section 1857h-2(a)(2) only provides for actions against the EPA Administrator. Plaintiffs missed this in preparing their amended complaint and continued to name as a defendant the director of the defunct NAPCA.

"(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to review in civil or criminal proceedings for enforcement."

The two sections, read together, mean that when the Administrator is charged with failure to perform a non-discretionary duty he must be sued in the district courts, but when the Administrator is charged with abusing his discretion in approving or promulgating a state plan, a petition to review his action may be filed only in the Courts of Appeals. Getty Oil Company (Eastern Operations) v. Ruckelshaus, 467 F.2d 349 (3rd Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973). In *Getty Oil*, the Court of Appeals said:

"If Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing for a forum for judicial review." (467 F.2d at 356.)

Section 1857h–5(b)(2) evidences a clear congressional intent that matters which can be raised in a review proceeding in the Courts of Appeals shall not be litigated elsewhere. *See* Appalachian Power Co. v. Environmental Pro. Agency, 477 F.2d 495, 499 (4th Cir. 1973).

This Court must weigh the claims relating to the federal defendants against the provisions of the Clean Air Act to determine if a basis for jurisdiction exists.

At the February 16, 1972, conference, the Court inquired into the nature of the claim against the federal defendants. The response of plaintiffs' counsel reveals that even plaintiffs regard this Court's grip on the federal defendants as tenuous at best:

"This admittedly, your Honor, is a gray area for us. We think that un-

der the federal law, the federal defendant could exercise certain influence and certain leadership in this problem.

"Now, in similar situations, for example, in the construction of highways, the court has requested the plaintiff to plead all parties who at any time had any input into the so-called decision making process.

"And the reason that we enjoined the federal defendant was because they do have some input. We think that this input should be stronger and they should be more aware of the problem here, and should have worked aggressively perhaps, with the West Virginia Air Pollution Control Commission and Union Carbide on this." (Transcript, at 21–22.)

Turning to specifics, the allegation (Amended compl., par. 21) that the "NAPCA has arbitrarily failed and will continue to fail to designate an air quality control region for the protection of Plaintiffs" does not state a claim which is cognizable in this Court under the Clean Air Act. If a plaintiff purports to sue under a particular statute, "allegations of fact to found . . . a claim cognizable under [that statute] are essential to the jurisdiction of the District Court." Dinneen v. Williams, 219 F.2d 428, 430 (9th Cir. 1955). Section 1857h–2(a)(2) of the Clean Air Act only confers jurisdiction on district courts when the EPA Administrator is charged with failure to perform a non-discretionary act or duty. The Clean Air Act imposes no duty upon the Administrator to designate any area as an air quality control region. Indeed, the 1970 Act makes each state an air quality control region. Moreover, Harrison County, where plaintiffs live, has been designated by the Administrator to be part of the North Central West Virginia Intrastate Air Quality Control Region. 40 C.F.R. § 81.234 (1972).[12]

12. The Air Quality Act of 1967 empowered the Secretary of HEW to designate air quality control regions. Congress ap-

parently believed that such regions were being established too slowly because the Clean Air Act of 1970 made each state

■ The allegation (Amended Compl., par. 21) that the NAPCA "failed to require [the State Commission] to develop an effective implementation plan for air pollution control in and around Plaintiffs area of residence" does not confer jurisdiction under the Clean Air Act. This allegation is far from precise, but plaintiffs evidently desire review of federal approval or promulgation of a West Virginia implementation plan for air quality standards. Such a review is authorized only before the Court of Appeals for the Fourth Circuit. 42 U.S.C. § 1857h–5(b)(2); Getty Oil Company (Eastern Operations) v. Ruckelshaus, 467 F.2d at 356; see Appalachian Power Co. v. Environmental Pro. Agency, 477 F.2d at 499.[13]

In sum, jurisdiction cannot be bottomed on the groping allegations against the federal defendants.

### IV. 28 U.S.C. § 1331.

■ Plaintiffs also attempt to invoke this Court's jurisdiction under 28 U.S.C. § 1331, which confers upon federal district courts original jurisdiction of suits arising under the Constitution, laws and treaties of the United States. To bring a case within section 1331 a plaintiff must have a substantial claim founded directly upon federal law. Gully v. First Nat. Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Wright, Federal Courts § 17 (2d ed. 1970).

Each of plaintiffs' theories under federal law have been examined previously in this memorandum; none support a federal claim cognizable in this Court. Therefore, plaintiffs' reliance upon section 1331 is misplaced.

### V. 28 U.S.C. § 1332.

Plaintiffs also attempt to invoke the diversity jurisdiction of this Court. They can not, since complete diversity is lacking. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); Bowman v. White, supra, 388 F.2d at 760. The amended complaint on its face reveals that plaintiffs are citizens of West Virginia. Accordingly, the claims asserted under state law cannot be litigated in this Court.[14]

### VI. 28 U.S.C. §§ 2201–2202.

■ · Finally, plaintiffs' effort to base jurisdiction on the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, is also misplaced. The Declaratory Judgment Act does not extend the jurisdiction of the district courts "to cases not otherwise within their competence." Getty Oil Company (Eastern Operations) v. Ruckelshaus, 467 F.2d at 356.

For the reasons assigned, it is

Ordered that this action be dismissed pursuant to Rule 12(h)(3), F.R.Civ.P., for lack of subject matter jurisdiction, without prejudice to the right of plaintiffs to reassert any claims under state law in a court of competent jurisdiction.

---

an air quality control region. In addition, the 1970 Act gave the EPA Administrator discretionary power to establish interstate or major intrastate air quality control regions to deal with pollution problems. 1970 U.S.Code Congressional and Administrative News, at 5357; 42 U.S.C. § 1857c–2(a) and (c).

13. Should the allegation be construed as a charge that the federal defendants failed to exert their influence upon the State Commission (see statement of plaintiffs' counsel, supra), there is no jurisdiction in this Court because failure to exert influence is manifestly discretionary. Section 1857h–2 permits suit in the district courts against the enforcer of the Clean Air Act only when he is charged with failure to perform a nondiscretionary act or duty.

14. While the amended complaint is silent as to the citizenship of defendants West Virginia Air Pollution Control Administration, its chairman, and director, these defendants are very likely West Virginia citizens.