**Kenneth O. GASPER et al.,**

v.

**LOUISIANA STADIUM AND EXPOSITION DISTRICT et al.**

Civ. A. No. 75–3732.

United States District Court,
E. D. Louisiana.

Sept. 8, 1976.

Jacob J. Meyer, Coleman, Dutrey, Thomson, Meyer & Jurisich, New Orleans, La., for plaintiffs.

Harry McCall, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, and Kendall Vick, Asst. Atty. Gen., Dept. of Justice, State of Louisiana, New Orleans, La., for defendants.

J. Harrison Henderson, III, Guste, Barnett & Colomb, New Orleans, La., for intervenor, American Lung Association of Louisiana, Inc.

JACK M. GORDON, District Judge.

This action is brought pursuant to the provisions of 42 U.S.C., § 1983, and 28 U.S.C., § 1343, in an attempt by the named plaintiffs to enjoin the Louisiana Stadium and Exposition District from continuing to allow tobacco-smoking in the Louisiana Superdome during events staged therein. The Louisiana Superdome is an enclosed arena located in New Orleans, Louisiana, owned and maintained by a political subdivision of the State of Louisiana known as the Louisiana Stadium and Exposition District (hereinafter referred to as "LSED"). The building is a public, multipurpose facility, and, since its completion, has been used for many events ranging from concerts to Mardi Gras parades.

The plaintiffs, Kenneth O. Gasper, Allen C. Gasper, Beverly Guhl, Dorothy L. Smira, Edward Smira, Albert E. Patent, and David A. Patent, individually and as representatives of other nonsmokers who have attended, or who will attend, such functions in the Louisiana Superdome, challenge LSED's permissive attitude toward smoking as being constitutionally violative of their right to breathe smoke-free air while in a State building. In support of their complaint, the plaintiffs aver that by allowing patrons to smoke in the Louisiana Superdome, LSED is causing other nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and discomfort to those nonsmokers, as well as interfering with their enjoyment of events for which they have paid the price of admission, all in violation of the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

The defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, contending the plaintiffs have failed to state claims upon which relief can be granted, in that nothing in the United States Constitution grants unto plaintiffs the rights they claim to have been violated.

In considering the merits of a Rule 12(b)(6) motion to dismiss, the Court must view the complaint in the light most favorable to the complainants and must regard all alleged facts as true. *Hargrave v. McKinney*, 413 F.2d 320 (5th Cir. 1969), vacated on other grounds, *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Hence, although plaintiffs contend that a motion to dismiss is inappropriate, this Court, is of the opinion that the Constitutional issues raised could never be more squarely presented than in the motion to dismiss now before the Court.

The plaintiffs have brought this action pursuant to Title 42, § 1983, of the United States Code. That section provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

There are two essential elements of a cause of action under § 1983. First, the conduct complained of must have been done by some person acting under color of state law and, second, such conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution and laws of the United States. *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beaumont v. Morgan*, 427 F.2d 667 (1st Cir. 1970); *Needleman v. Bohlen*, 386 F.Supp. 741 (D.Mass.1974). The absence of either of these elements is fatal to a cause of action under 42 U.S.C., § 1983, and it is the defendants' position that neither element exists in this lawsuit. By way of response, the plaintiffs contend that state action is established by the State's permitting smoking in the Superdome and by the selling of tobacco products, therein, and further alleges that such state action violates the First, Fifth, Ninth and Fourteenth Amendments to the Constitution. This Court does not believe that it is necessary to decide whether the complained-of conduct is or is not state action as required by § 1983, since the Court is of the opinion that there clearly has been no violation of plaintiffs' constitutional rights. Each of the alleged violations will now be considered.

### First Amendment

■ Just as the First Amendment protects against the making of any law which would abridge the freedom of speech or of the press, it also protects against any law or activity which would interfere with or contract the concomitant rights to receive those thoughts disseminated under the protection of the First Amendment. As the Court in *Griswold v. State of Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) said, "Without those peripheral

rights the specific rights would be less secure." *See* also, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

■ It is this peripheral right to receive others' thoughts and ideas that the plaintiffs herein contend is being subverted by the State's condoning tobacco-smoking in the Louisiana Superdome. The nonsmokers argue that the existence of tobacco smoke in the Superdome creates a chilling effect upon the exercise of their First Amendment rights, since they must breathe that harmful smoke as a precondition to enjoying events in the Superdome. In support of this rather unique argument, the nonsmokers cite *Lamont v. Postmaster General of United States*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). In *Lamont*, the plaintiff was the subject of a rule imposed by the Postmaster requiring a written statement evidencing the undersigned's desire to receive communist propaganda literature. In the absence of this written request, the literature, although properly addressed, would not be delivered. The United States Supreme Court held that this was an unconstitutional infringement on the recipient's First Amendment rights, citing several other cases where licensing and taxing had been employed by federal agencies to regulate the flow of information. The Court reasoned:

> "Just as the licensing or taxing authorities in the Lovell, Thomas, and Murdock cases sought to control the flow of ideas to the public, so here federal agencies regulate the flow of mail." (*Lamont, supra*, at 1496.)

The Court in *Lamont* was understandably concerned with the apparent attempts of the Postmaster General to either identify or harass those individuals who wished to receive communist propaganda through the mail. The laudable purpose of the *Lamont* decision was to prohibit unfettered regulation of the free exchange of information and ideas. Unlike the *Lamont* case, the instant case contains no facts even remotely indicating an attempt by the State of Louisiana to restrict anyone's right to receive

information or entertainment. Other than making periodic requests that patrons of the Louisiana Superdome voluntarily refrain from smoking, the State has adhered to the tenet of not interfering with the manner in which spectators watch events for which they have paid.

To say that allowing smoking in the Louisiana Superdome creates a chilling effect upon the exercise of one's First Amendment rights has no more merit than an argument alleging that admission fees charged at such events have a chilling effect upon the exercise of such rights, or that the selling of beer violates First Amendment rights of those who refuse to attend events where alcoholic beverages are sold. This Court is of the opinion that the State's permissive attitude toward smoking in the Louisiana Superdome adequately preserves the delicate balance of individual rights without yielding to the temptation to intervene in purely private affairs. Hence, this Court finds no violation of the First Amendment to the United States Constitution.

### Due Process of Law

■ In further support of his argument that the State is violating Title 42, § 1983 of the United States Code, the plaintiffs cite the Fifth and Fourteenth Amendments to the Constitution, alleging that the State of Louisiana is unlawfully depriving those nonsmoking patrons of the Louisiana Superdome of their life, liberty and property without due process of law. The plaintiffs contend that the penumbral protection of the Fifth and Fourteenth Amendments includes the right to be free from hazardous tobacco smoke while in State buildings, and cite *Pollak v. Public Utilities Commission of District of Columbia*, 89 U.S.App.D.C. 94, 191 F.2d 450 (1951), reversed, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), as authority for such an argument. In *Pollak*, the Capital Transit Co. (Capital) operated streetcars and buses in the District of Columbia pursuant to Congressional authorization. Such authorization came in the form of a Joint Resolution of Congress,

giving Capital not only a franchise, but a virtual monopoly of the entire local business of mass transportation in the District of Columbia area.[1]

In 1948, Capital entered into a contract with Washington Transit Radio, Inc. (Transit Radio), wherein Transit Radio agreed to install and maintain loudspeakers in all vehicles owned by Capital and to provide broadcasting for at least eight hours each day. The programming of such broadcasts included music, announcements and advertisements and would be transmitted irrespective of the wishes of passengers. To sell advertising spots in these programs, Capital would assure prospective buyers that their advertisements would reach a guaranteed or captive audience since Capital knew that most commuters were compelled to begin or complete their trips into or out of the District of Columbia by using buses or streetcars owned by Capital.

The plaintiffs brought suit alleging that because they were obliged to use the buses and streetcars of Capital in connection with the practice of their profession, they were being forced to listen to the allegedly obnoxious broadcasts against their will. They further alleged that this "forced listening" amounted to an infringement of their constitutionally protected rights in that they were being deprived of liberty without due process of law. The District Court granted the defendant's motion to dismiss the petition as not stating a claim upon which relief could be granted, and the case was appealed. The United States Court of Appeals, District of Columbia Circuit, reversed, holding that the broadcasts were in violation of the Fifth Amendment. The Supreme Court, finding no such violation, reversed and remanded the case back to the District Court.

The plaintiffs in the case now before this Court rely primarily upon the Circuit Court's opinion in *Pollak*, stating in memorandum that the case was reversed by the United States Supreme Court on grounds other than those for which they now cite the Circuit Court opinion. This Court cannot agree with the plaintiffs' argument.

In a section of its opinion entitled "No violation of the Fifth Amendment," the Supreme Court recognized, but did not agree with, the Circuit Court's conclusion that if one passenger objects to the programming in question as an invasion of his constitutional right of privacy, the use of radio broadcasting on those public vehicles must be discontinued. The Court said:

"This position wrongly assumes that the Fifth Amendment secures to each passenger on a public vehicle regulated by the Federal Government a right of privacy substantially equal to the privacy to which he is entitled in his own home. *However complete his right of privacy may be at home, it is substantially limited by the rights of others when its possessor travels on a public thoroughfare or rides in a public conveyance.* Streetcars and buses are subject to the immediate control of their owner and operator and, by virtue of their dedication to public service, they are for the common use of all of their passengers. The Federal Government in its regulation of them is not only entitled, but is required to take into consideration the interests of all concerned.

\* \* \* \* \* \*

"The liberty of each individual in a public vehicle or public place is *subject to reasonable limitations in relation to the rights of others.*" *Public Utilities Commission v. Pollak, supra,* 343 U.S. at 464, 465, 72 S.Ct. at 821, 822. (Emphasis added.)

Even if this Court were to consider only the Circuit Court's opinion in *Pollak,* there are material factors in that case which distinguish it from the case presently at bar. First, the Circuit Court did not have occasion to weigh or balance an individual's "right" to bring a radio on the bus or streetcar for his own pleasure against the "right" of others to remain in silence. To the extent the Circuit Court found in favor of those who wished to remain free of forced listening, as opposed to those who

---

1. Act of March 4, 1925, 43 Stat. 1265; Joint Resolution of Jan. 14, 1933, 47 Stat. 752.

wished to listen to the broadcasts provided by Transit Radio, the Court was specifically reversed. The question remains whether the Circuit Court's decision in *Pollak* would have been the same if a private citizen, rather than the transit company itself, had been permitted to bring and play a radio on the bus or streetcar. This latter factual situation would be analogous to that before this Court, as opposed to that which the Circuit Court had before it in *Pollak*.

More important, however, is the fact that the passengers in *Pollak*, unlike the spectators in this case, were "a captive audience." Put another way, those commuters in *Pollak* were forced to listen to the broadcasts in question because they were forced to ride the transit system. There was no other alternative to taking the bus or streetcar. In fact, because Capital was the only transit company authorized by Congress to operate in the District of Columbia, it had a virtual monopoly of the entire local business of mass transportation.

The gravamen of the Circuit Court's opinion in *Pollak* was the fact that the Capital Transit Company was bombarding passengers with sound they could not ignore in a place where they had to be.

This case differs greatly from the scenario in *Pollak* since those who attend events in the Louisiana Superdome are in no way compelled to use the facility. On the contrary, they are free to attend or not attend as they see fit, and consequently the most important premise upon which the *Pollak* decision rests is absence in the case *sub judice.*

This Court is of the further opinion that the process of weighing one individual's right to be left alone, as opposed to other individuals' alleged rights under the Fifth and Fourteenth Amendments, is better left to the processes of the legislative branches of Government. For this reason, the rationale of *Tanner v. Armco Steel Corporation,* 340 F.Supp. 532 (S.D.Tex.1972) is more persuasive to this Court. In *Tanner,* the plaintiffs brought suit to recover for injuries allegedly sustained as a result of the exposure of their persons to air pollutants

emitted by defendant's petroleum refineries and plants located along the Houston Ship Channel. As in the instant case, the plaintiffs in *Tanner* cited a potpourri of federal constitutional and statutory provisions to establish jurisdiction. The Court found both "state action" and "constitutional deprivation" lacking.

After the Court acknowledged a recent boom of claims asserting the right of the general populace to enjoy a decent environment, it explained,

"... the judicial process, through constitutional litigation, is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes. Furthermore, the inevitable trade-off between economic and ecological values presents a subject matter which is inherently political, and which is far too serious to relegate to the ad hoc process of 'government by lawsuit' in the midst of a statutory vacuum.

\* \* \* \* \* \*

"[N]o legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution." *Tanner v. Armco Steel Corp., supra,* 340 F.Supp. at pp. 536, 537.

Accord, *Hagedorn v. Union Carbide Corp.,* 363 F.Supp. 1061 (N.D.W.Va.1973); (holding that plaintiff's allegations that emissions from Union Carbide Corporation's plant in West Virginia were fouling the air did not present a controversy arising under the Fifth, Ninth or Fourteenth Amendments to the Constitution); *see also, Doak v. City of Claxton, Georgia,* 390 F.Supp. 753 (S.D.Ga.1975.)

■ This language accurately reflects the fact that the courts have never seriously considered the right to a clean environ-

ment to be constitutionally protected under the Fifth and Fourteenth Amendments. It is well established that the Constitution does not provide judicial remedies for every social and economic ill. *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Accordingly, if this Court were to recognize that the Fifth and Fourteenth Amendments provide the judicial means to prohibit smoking, it would be creating a legal avenue, heretofore unavailable, through which an individual could attempt to regulate the social habits of his neighbor. This Court is not prepared to accept the proposition that life-tenured members of the federal judiciary should engage in such basic adjustments of individual behavior and liberties.

### Fundamental Rights

■ Citing the Ninth Amendment to the United States Constitution and *Griswold v. State of Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the plaintiffs finally argue that the right to breathe clean air is a fundamental right, although not specifically enumerated in the Bill of Rights, and is thus protected by the Constitution. The Ninth Amendment reads,

"The enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S.C.A.Const. Amend. 9.

The Ninth Amendment renaissance began with *Griswold v. State of Connecticut*, *supra*, wherein the Court recognized that the right of privacy in a marital relationship is a fundamental right protected by the Constitution. The plaintiffs herein contend that the right to be free from hazardous smoke fumes caused by the smoking of tobacco is as fundamental as the right of privacy recognized in the *Griswold* decision. This Court does not agree. To hold that the First, Fifth, Ninth or Fourteenth Amendments recognize as fundamental the right to be free from cigaret smoke would be to mock the lofty purposes of such amendments and broaden their penumbral protections to unheard-of boundaries. The jurisprudence bears this out. In *Ely v.* *Velde*, 451 F.2d 1130 (4th Cir. 1971), the Court considered a suit brought by residents of the Green Springs area of Louisa County, Virginia, to halt the proposed funding and construction in their neighborhood of a Medical and Reception Center for Virginia prisoners. With regard to the § 1983 action against the State Director of the Department of Welfare and Institutions for the State of Virginia, the Court said,

"An ancillary argument of the complaining parties, not vigorously pressed, is that apart from NHPA and NEPA, the federal Constitution was violated by Brown's 'unreasonable and arbitrary action' in placing the proposed Center in Green Springs. We decline the invitation to elevate to a constitutional level the concerns voiced by the appellants. While a growing number of commentators argue in support of a constitutional protection for the environment, this newly-advanced constitutional doctrine has not yet been accorded judicial sanction; and appellants do not present a convincing case for doing so.

"Appellants baldly attempt to stretch rights, protected by law against infringement by federal agencies only, to cover the states and their officers in disregard of the plainly limited character of the legislation. They make their assertion without citation of a single relevant authority and with no attempt to develop supporting reasons. The general concept of conservation and protection of the environment has, in the recent past, made vast advances, prompting the adoption of NHPA, NEPA and other legislation. But without any showing whatever, we are not free to lay upon the State of Virginia new obligations on constitutional grounds.

"Neither the statutes nor the Constitution confers rights on the appellants which are enforceable *vis-a-vis* the State of Virginia under 42 U.S.C. § 1983." *Ely v. Velde*, *supra*, at 1139.

Accord, *Hagedorn v. Union Carbide Corp.*, 363 F.Supp. 1061 (N.D.W.Va.1973); see also, *Doak v. City of Claxton, Ga.*, 390 F.Supp. 753 (S.D.Ga.1975).

722

In another case, *Environmental Defense Fund, Inc. v. Corps of Eng. of U. S. Army,* 325 F.Supp. 728 (E.D.Ark.1970), the plaintiff filed suit against the Corps of Engineers of the U. S. Army and others, seeking to enjoin the making of any contract or the doing of any work in furtherance of the plan of the defendants to construct a dam across the Cossatat River in Arkansas. Although denying on other grounds several motions to dismiss filed by the defendant, the Court explained,

"The Ninth Amendment may well be as important in the development of constitutional law during the remainder of this century as the Fourteenth Amendment has been since the beginning of the century. But the Court concludes that the plaintiffs have not stated facts which would under the present state of the law constitute a violation of their constitutional rights as alleged in the seventh cause of action in their complaint. The Court's decision on this point gives further emphasis to its statement, supra, that final decisions in matters of this type must rest with the legislative and executive branches of government." *Environmental Defense Fund, Inc. v. Corps of Eng. of U. S. Army, supra,* at 739.

This Court feels that, unlike the right of privacy as it relates to the institution of marriage, the "right" to breathe smoke-free air while attending events in the Louisiana Superdome certainly does not rise to those constitutional proportions envisioned in *Griswold v. State of Connecticut.* To hold otherwise would be to invite government by the judiciary in the regulation of every conceivable ill or so-called "right" in our litigious-minded society. The inevitable result would be that type of tyranny from which our founding fathers sought to protect the people by adopting the first ten amendments to the Constitution.

### Conclusion

■ Pretermitting the issue of state involvement, this Court is satisfied that the plaintiffs herein have failed to allege a deprivation of any right secured by the United States Constitution and, hence, have failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983. It is worth repeating that the United States Constitution does not provide judicial remedies for every social and economic ill. For the Constitution to be read to protect nonsmokers from inhaling tobacco smoke would be to broaden the rights of the Constitution to limits heretofore unheard of, and to engage in that type of adjustment of individual liberties better left to the people acting through legislative processes.

Since this Court has concluded that the plaintiffs have asserted no claim to sustain federal jurisdiction, there can be no jurisdiction in this Court for the alleged "pendent" state claims asserted in the complaint by plaintiffs. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss the plaintiffs' complaint be and is hereby GRANTED.