Adel GORDON, Appellant,

v.

RAVEN SYSTEMS & RESEARCH,
INC., Appellee.

No. 81–1172.

District of Columbia Court of Appeals.

Argued Sept. 8, 1982.

Decided May 5, 1983.

John F. Banzhaf III, with whom Harris S. Ammerman, Washington, D.C., was on brief, for appellant.

Ronald C. Jessamy, with whom Willie L. Leftwich, Washington, D.C., was on brief, for appellee.

Before NEBEKER, PRYOR and TERRY, Associate Judges.

PRYOR, Associate Judge:

Appellant, who has a special sensitivity to cigarette smoke, was terminated from her employment when she refused to work in an area occupied by other employees who smoked cigarettes. She brought an action in the Superior Court alleging that her termination was unlawful because her employer was negligent in not providing her with a smoke-free workplace. At the close of appellant's case-in-chief, the court granted a motion for directed verdict on the ground that appellant had failed to state a cause of action for which the common law provided a remedy.

Appellant presents three claims of error by the trial court: She asserts that (1) the "law of the case" doctrine operated to preclude the grant of appellee's motion for directed verdict, because of the court's prior denial of appellee's motion for summary judgment; (2) the denial of appellant's motion for leave to amend her complaint to include a statutory claim for relief was an abuse of discretion; and (3) the grant of appellee's motion for directed verdict was plainly wrong because the common law of the District of Columbia imposes a duty on the employer to provide a smoke-free workplace for employees who have special sensi-

tivities to tobacco smoke. We disagree and affirm.

I

*Factual Background*

Appellee, Raven Systems and Research, Inc., is a scientific data processing and research company. Appellant reported for work with Raven, on May 21, 1979, as a member of an insecticide team. Her duties involved encoding registration standards for insecticides. After reporting for work, appellant informed appellee that she had a special sensitivity to tobacco smoke and requested placement in an area apart from smokers. Appellee had a policy of placing work group members in close proximity to promote operational efficiency and good communications. However, appellee accommodated appellant by placing her in an area, away from her work group, where there were six nonsmokers. The separation, however, served to undermine appellee's policy of operational efficiency and on September 21, 1979, appellant was notified that she could no longer remain away from her work group. Thus, appellant was transferred to a room occupied by other members of her work group, one of whom smoked cigarettes. After appellant refused to work in the room with smokers, appellee obtained the agreement of other members of the team to refrain from smoking when appellant was in the room. The arrangement proved acceptable to appellant and she moved into the office later that day.

Appellant's new workstation, however, was situated near the door to an adjoining office, in which another cigarette smoker was stationed. Tobacco smoke flowed into the office where appellant was assigned and activated symptoms of headache, nausea, and tearing of the eyes.

On Monday, September 24, 1979, appellant decided to return to her former workstation, in the room with the nonsmokers. Appellant informed appellee that the tobacco smoke from the office adjoining her assigned workstation made it impossible for

her to occupy the room with her work group. Two days later, appellant received a memorandum from appellee stating that she was being placed on a 30-day period of formal probation and that appellee was disallowing her accommodations away from her work group. The notice advised appellant that her behavior was deemed insubordinate on the basis of her refusal to report to her assigned workstation. Appellant ignored the terms of her probation and brought the matter to the attention of appellee's Personnel Office later that same day. However, appellant did not return to her assigned workstation and, the next day, was handed another memorandum, terminating her employment, effective that day. The basis for the termination was her refusal to comply with the directives of the memorandum of probation.

*Pretrial Proceedings*

On November 2, 1979, appellant filed a complaint in the Superior Court of the District of Columbia seeking injunctive relief. On November 14, appellant's motion for injunctive relief was denied, and an amended complaint seeking money damages was filed on November 16.

There were approximately 18 months of discovery, consisting primarily of interrogatories. On February 15, 1980, appellee filed a motion to dismiss, or in the alternative, for summary judgment. On March 7, this motion was denied by the presiding judge, who found the existence of controverted issues of material facts.[1] On December 10, the trial court ordered all discovery completed by March 31, 1981. On June 10, a pretrial conference was held; at that time appellant made an oral motion for leave to amend her complaint to include a claim for relief under the anti-discrimination clauses of the District of Columbia Human Rights

Act, D.C.Code § 1–2501 *et seq.* (1981).[2] The motion was denied without prejudice and appellant filed a written motion on June 19, 1981. This motion was denied on July 17, 1981. At trial, after the close of appellant's case, appellee successfully moved for a directed verdict. This appeal followed.

## II

Appellant contends that the denial of appellee's motion for summary judgment operates, under the "law of the case" doctrine, to preclude the subsequent grant of appellee's motion for directed verdict.

■ "The 'law of the case' doctrine bars a trial court from reconsidering the same question of law that was presented to and decided by another [judge] of coordinate jurisdiction ...." *Tompkins v. Washington Hospital Center,* 433 A.2d 1093, 1098 (D.C.1981). The analysis focuses on whether the question initially decided is substantially the same as the issue being presented and whether the court's first ruling was deemed to be final. *Id.*

■ A ruling on a motion for summary judgment is not governed by the same standard as a motion for directed verdict. The primary concern addressed in summary judgment is the existence of unresolved genuine issues of material fact. Where these issues are extant, the motion must be denied. *Starks v. North East Insurance Co.,* 408 A.2d 980, 982 (D.C.1979). Conversely, a motion for directed verdict considers whether there is an evidentiary foundation sufficient in fact to permit intelligent deliberation by a jury. *Papanicolas v. Group Hospitalization, Inc.,* 434 A.2d 403, 404 (D.C.1981). It is beyond argument that

1. The judge found three issues of material fact: (1) whether there were any oral promises made to appellant when she was hired by appellee; (2) whether appellant was given a safe workplace in which to work; and (3) whether appellee did all that it could to alleviate the conditions objected to by appellant.

2. The D.C. Human Rights Act proscribes discrimination against handicapped persons, by employers, for which reasonable accommodation can be made. Appellant asserts that her discharge was a discriminatory act based on her congenital sensitivity to tobacco smoke. She alleges further that the "handicap" is one for which reasonable accommodation could be made.

the respective legal standards are different. Thus, in this instance, "the same questions of law" considered by the motions judge were not presented to the trial judge. Not only were the legal tests different, but the nature of the evidence before each judge was also different. Lastly, it is noteworthy that we have held that there may be successive motions for summary judgment in the same case where there are changes in the record. *Tompkins v. Washington Hospital Center, supra,* 433 A.2d at 1198. Accordingly, we find it demonstrably clear that the decision of the motions judge did not purport to be a final ruling on the same issues which were later raised in the course of the jury trial so as to invoke the "law of the case" doctrine.

### III

Appellant also asserts that the trial court's denial of her motion for leave to amend her complaint, pursuant to Super.Ct. Civ.R. 15(a), was an abuse of discretion amounting to reversible error.

 Once responsive pleadings have been filed, permission to amend is entrusted to the sound discretion of the trial court and appellate court review of the question is limited to whether there was an abuse of discretion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Eskridge v. Johnson,* 401 A.2d 986 (D.C. 1979). Because this jurisdiction favors resolution of controversies on their merits, leave to amend, generally speaking, is freely given. *See Keith v. Washington,* 401 A.2d 468 (D.C.1979). Nonetheless, there are instances where the request may be refused.

It is the responsibility of the trial court, when exercising its discretion, to fashion a ruling by balancing a variety of factors. Among those factors are the length of the pendency of the proceedings, the existence of bad faith or dilatory motive, prejudice to the opposing party, *see Bennett v. Fun and Fitness of Silver Hill,* 434 A.2d 476 (D.C. 1981); *Randolph v. Franklin Investment Co., Inc.,* 398 A.2d 340, 350 (D.C.1979) (en

banc), and we might add, the orderly administration of justice.

Appellant sought a second amendment of her complaint 18 months after its initial filing and over one month after the court ordered cessation of discovery. The request was first made at a pretrial conference and later in written form prior to trial.

Although there is no showing of bad faith, appellant offered no explanation regarding the reasons for the aggravated delay. In opposition to the request, appellee asserted that the amendments would create new theories of liability and thereby require additional discovery and probably the necessity of additional witnesses, including experts who otherwise would not have been called. Finally, the amendment would require that the court begin anew the pretrial and trial processes.

Recognizing that, at bottom, the trial judge must balance these competing interests, we said in *Eagle Wine and Liquor Co. v. Silverberg Electric Co.,* 402 A.2d 31, 35 (D.C.1979),

> [T]he lateness of a motion may well provide the predicate for a proper determination that prejudice to the opposing party would result if an amendment were allowed. Such determination may rest on findings that the moving party has not put forth any satisfactory reason for the delay (*e.g.,* new information which could not have been uncovered earlier) and that an "unduly delayed" amendment would mean a large additional expenditure of effort and money by the opposing party in discovery on a new aspect of the case after substantial discovery has taken place. (Citations omitted.)

Here the appellant waited 18 months until the eve of trial, without explanation, to interject statutory claims which were available from the beginning. It is clear that the trial court's findings of prejudice to appellee, directly engendered by appellant's delay, has a rational basis in the record. We observe that the court, to a lesser degree, and aside from appellee's interests, could properly consider the adverse effect

of appellant's requests upon the orderly administration of cases scheduled for trial. We conclude that there was no abuse of discretion in the denial of leave to amend.

## IV

We turn now to appellant's primary claim on appeal, that the common law imposes upon an employer the duty to provide a smoke-free environment for an employee with special sensitivities to tobacco smoke. In her amended complaint, appellant alleged "she was sensitive to the burning of tobacco products" and had "experienced severe symptoms of eye irritation, nasal congestion, chest tightness, nausea and headache after being exposed to smoke-filled rooms while at work." She further contended that "[d]efendant is under a common law duty to provide plaintiff with a safe place to work" and that "[d]efendant has breached, and is continuing to breach this duty."

The issue of nonsmoker's rights is a relatively new one in American jurisprudence. Several courts have expressly rejected arguments for limiting the right to smoke based on various provisions of the United States Constitution, *Federal Employees for Nonsmokers' Rights v. United States,* 446 F.Supp. 181 (D.D.C.1978), *aff'd,* 598 F.2d 310, *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *Gaspar v. Louisiana Stadium & Exposition District,* 418 F.Supp. 716 (E.D.La.1976); *GASP v. Mecklenburg County,* 42 N.C.App. 225, 256 S.E.2d 477 (1979), while other courts have specifically held there is no constitutional right to a healthful environment, *Ely v. Velde,* 451 F.2d 1130, 1139 (4th Cir.1971); *In re Agent Orange Product Liability Litigation,* 475 F.Supp. 928, 934 (E.D.N.Y.1979); *Tanner v. Armco Steel Corp.,* 340 F.Supp. 532, 537 (S.D.Tex.1972). Indeed, some courts have wisely noted that the issue of nonsmokers' rights is one better left to the legislature. *Federal Employees for Nonsmokers' Rights, supra,* 446 F.Supp. at 185; *Gaspar, supra,* 418 F.Supp. at 722. As one court observed:

> [T]he judicial process ... is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes. Furthermore, the inevitable trade-off between economic and ecological values presents a subject matter which is inherently political and which is far too serious to relegate to the ad hoc process of "government by lawsuit" ....

*Tanner v. Armco Steel Corp., supra,* 340 F.Supp. at 636–37.

Unlike the litigants in the above-cited cases, however, appellant asks us not to construe a statute conferring protection upon a particular class, but rather encourages us to act where the legislature has not, by declaring that an employee with particular sensitivities to tobacco smoke has a common law right to a smoke-free environment. We decline so to hold.

■ It is well established in the District of Columbia that an employer owes a duty to provide all of his employees with a reasonably safe workplace. *Bailey v. Central Vermont Ry.,* 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943); *Fitzpatrick v. Fowler,* 83 U.S.App.D.C. 229, 168 F.2d 172 (1948); *Decatur v. Charles H. Thompkins Co.,* 58 App. D.C. 102, 25 F.2d 526 (1928); *Green v. Pyne,* 53 App.D.C. 271, 289 F. 929 (1923); *Gibson v. Gernat,* 50 App.D.C. 3, 267 F. 305, *cert. denied,* 253 U.S. 487, 40 S.Ct. 483, 64 L.Ed. 1026 (1920). This court has never held, however, that an employer owes a duty to adapt his workplace to the particular sensitivities of an individual employee, as appellant requests. Appellant has cited no authority from this or any other jurisdiction to support that proposition.

Instead, appellant relies almost exclusively upon one case, *Shimp v. New Jersey Bell Telephone Co.,* 145 N.J.Super. 516, 368 A.2d 408 (1976), which held that an employer's common law duty to maintain a safe workplace extended to the dangers of cigarette smoke. In that case the chancery court

issued an injunction restricting smoking to the employees' lunchroom after one employee complained of illness from the smoke.

The *Shimp* case, however, is readily distinguishable from the case *sub judice,* and we need not pass on its suitability as substantive law. In *Shimp* the court took judicial notice of a plethora of scientific studies and affidavits of medical experts before concluding that cigarette smoke posed a serious health threat to all workers. Appellant, on the other hand, has presented no scientific evidence of the deleterious effects of tobacco smoke on nonsmokers in general. Her claim is only that, as an employee with a particular sensitivity to cigarette smoke, she was owed a common law duty to a workplace free of tobacco smoke.

██ Fortunately, gone are the days of the sweat shop when a servant labored for a master at the servant's own peril. Today the common law has been supplemented by a myriad of industrial safety statutes and workers' compensation laws designed to achieve a safe workplace for employees and to compensate workers for injuries sustained in the course of their employment.[3] However, the common law does not impose upon an employer the duty or burden to conform his workplace to the particular needs or sensitivities of an individual employee. Without such a duty, appellant can complain of no wrong. Accordingly, the judgment of the trial court directing a verdict for the appellee should be and is

*Affirmed.*

---

3. *See, e.g.,* D.C.Code § 36–201 *et seq.* (1981) (minimum wages and industrial safety) and § 36–301 *et seq.* (1981) (workers' compensation); Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* (1976); Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.* (1976); Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1976).