Keith T. WILHELM, Plaintiff–
Appellant,

v.

CSX TRANSPORTATION, INC.,
Defendant–Appellee.

No. 01–4123.

United States Court of Appeals,
Sixth Circuit.

May 29, 2003.

Before GUY, SUHRHEINRICH, and
BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff, Keith T. Wilhelm, appeals from the entry of summary judgment in favor of his employer, CSX Transportation, Inc. (CSXT), on his claim for damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60.[1] Plaintiff alleged that CSXT breached its duty to provide him a safe place to work when his coworkers regularly violated defendant's no-smoking policy, defendant negligently failed to enforce its policy, and plaintiff required treatment for asthma attacks as a result of occupational exposure to second-hand cigarette smoke. It was error, plaintiff claims, for the district court to rely on his failure to present evidence regarding the hazardous effects of second-hand smoke generally when (1) CSXT did not dispute that it was hazardous; and (2) the district court noted in a footnote that there was considerable evidence that it was harmful, but refused to take judicial notice of that evidence. Without expressing an opinion on the merits of plaintiff's claim, we find the district court erred in finding summary judgment should be granted because plaintiff had failed to present scientific or other evidence that second-hand smoke was hazardous to nonsmokers generally.

## I.

### A. Factual Background

Plaintiff has been employed as a locomotive engineer for CSXT since 1979, and works at its Walbridge, Ohio terminal. In May 1997, plaintiff, a former smoker himself, was diagnosed with severe asthma. In 1996, CSXT adopted a policy prohibiting smoking in all buildings in the Walbridge terminal except for certain designated areas (apparently including private offices). CSXT extended the no-smoking policy to a full ban on smoking in all buildings at the Walbridge terminal in February 1998, and then to all locomotive cabs in January 1999. Notices regarding the policy stated that defendant was dedicated to providing all employees with a safe smoke-free environment.

As a locomotive engineer, plaintiff is required to enter the crew rooms and shanties at the beginning of each trip to prepare or receive the necessary paperwork. Plaintiff's physician advised defendant in August 1998, that: "Mr Wilhelm has severe asthma that is worsened by exposure to second-hand smoke. His workplace should be *smoke free* to control his asthma." Defendant's chief medical officer sent a letter to plaintiff in September 1998, acknowledging receipt of the note from his doctor, his need for a smoke-free environment, and the company's no-smoking policy.

Plaintiff testified that he was confronted with smoke in the Walbridge terminal buildings on almost a daily basis, most often in the crew rooms and shanties, caused by cigarette smoking by both coworkers and supervisors. Defendant states that plaintiff was not required to stay in the crew rooms, but could wait outside if he chose, and was free to open the doors and "air out" the rooms before going in. Attempting to minimize the significance of plaintiff's exposure, defendant notes that plaintiff admitted that 50% to 90% of his shift was spent in the locomotive engine where he was not exposed to second-hand smoke.

Plaintiff made it a practice to note in his log book when he encountered smoke at

---

**1.** Plaintiff also alleged handicap discrimination in violation of Ohio law, but has expressly abandoned that claim on appeal.

work, but did not always report it to a supervisor. When he did report violations of the no-smoking policy, he felt the policy was given "lip service" because no warning or discipline was ever imposed. Defendant's practice was simply to require the offending smoker to "put it out" on request. Defendant states that violations of the no-smoking policy were handled informally at the supervisor's discretion, and emphasizes that only once did a coworker fail to put out a cigarette when requested by plaintiff. Plaintiff also sent several written complaints and e-mails to management about the failure to enforce the policy, but apparently never filed a formal grievance.

Plaintiff testified that his exposure to the second-hand cigarette smoke exacerbated his asthma, which sometimes required non-emergency medical treatment. Twice plaintiff sought emergency medical attention for asthma triggered by exposure to smoke at work. Plaintiff also completed a personal injury report on two occasions. Plaintiff claimed that he missed "multiple days" of work due to aggravation of his asthma caused by exposure to smoke at work. Plaintiff testified that he only had asthma attacks after being exposed to cigarette smoke at work.

## B. Summary Judgment

Defendant's first motion for summary judgment was withdrawn, at the court's request, in order that plaintiff have an opportunity to submit scientific or other evidence about the health hazards to nonsmokers from second-hand smoke. Defendant's second motion for summary judgment took the position that because the harm plaintiff complains of is a reaction to the smoke itself, not its carcinogenic properties, "any evidence regarding the dangers of cigarette smoke to the general population is simply not relevant to this case." As such, defendant stated its view that although it had not been able to de-

pose plaintiff's expert, Ronald M. Davis, M.D., "it appears he could testify to nothing more than the deleterious effect of cigarette smoke which, as noted above, is not relevant to the present action."

Defendant sought summary judgment on the FELA claim on the grounds that: (1) CSXT enforced its no-smoking policy; (2) even if the policy was not enforced, plaintiff's sensitivity to cigarette smoke would not impose a duty to make special accommodation for plaintiff's particular sensitivities, or render the workplace "unsafe" for FELA purposes; and (3) CSXT was not negligent because employees who violated the policy were acting outside the course and scope of their employment. Claiming that smoke did not render the work environment unsafe as a matter of law, defendant argued that:

> In any event, there is absolutely no evidence in this case that anyone other than plaintiff has been exposed to cigarette smoke against their wishes, and in violation of CSXT's no-smoking policy. Similarly, there is no evidence that the amount of smoke to which plaintiff was allegedly exposed was sufficient to render CSXT's workplace unreasonably dangerous to all employees so exposed. While acknowledging that no workplace is perfectly safe, the evidence in this case is that CSXT's workplace was, and is, reasonably safe as required by the FELA. CSXT's policy and method of enforcement is that which a reasonably prudent employer would provide, markedly so in contrast to plaintiff's desired method of punishment [termination of the violator's employment].

Plaintiff's response focused on evidence that defendant had adopted the no-smoking policy to protect all objecting employees from exposure to second-hand smoke; that the policy was supposed to be enforced by management; that supervisors themselves violated the policy; and that

the highest level manager at Walbridge conceded that he had not vigorously enforced the policy. Plaintiff also argued that the case was not about a duty to "specially accommodate" him and his problem with asthma, but the duty to enforce the rule on which plaintiff and all other employees had a right to rely on as defining the "standard of conduct" for CSXT.

The district court found the critical issue was whether the presence of second-hand smoke in the workplace breached the defendant's duty to provide its employees with a reasonably safe place to work. The court found it was fatal to plaintiff's FELA claim that he failed to provide any scientific evidence showing the harmful effects of second-hand smoke on nonsmokers generally. Plaintiff filed a motion for reconsideration asserting that the harmful effects had not been disputed by defendant, but also asking either for an opportunity to submit such evidence or for the court to take judicial notice of all the materials it had uncovered and included in a footnote of its opinion. The district court denied the motion for reconsideration, explaining that:

> While it is likely that plaintiff is, at least from time to time, exposed to second hand smoke, and, indeed, that such exposure may be known to supervisors charged with enforcing the defendant's no-smoking policy, it would be entirely speculative to assume that such exposure is so extensive and recurrent that it creates a hazard to the plaintiff's wellbeing.
>
> In any event, plaintiff's request comes too late. As defendant points out, it simply would not be appropriate to give him a third bite at the apple.

Plaintiff has appealed.

## II.

We review the decision to grant summary judgment *de novo*. In deciding whether a genuine issue of material fact has been raised, we must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997).

## A. FELA

Section 1 of FELA provides that a common carrier engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. Negligence under FELA is a question of federal law, which generally turns on common law principles of negligence and injury. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (standards for negligent infliction of emotional distress under FELA).

The statute has been liberally construed to further Congress's remedial goals. For example, occupational diseases such as silicosis, not just injuries caused by accidents, have been found to constitute compensable physical injuries under FELA. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Also, a "relaxed standard of causation" applies, under which "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Plaintiff must produce something more than a scintilla of evidence of negligence to establish a jury-submissible claim under FELA. *Aparicio v. Norfolk & W.*

*Ry. Co.*, 84 F.3d 803 (6th Cir.1996). "To prevail on a FELA claim, a plaintiff must 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990) (citation omitted); *see also Aparicio*, 84 F.3d at 810.

 Railroads have a duty to furnish employees with a reasonably safe place in which to work and with protection against the hazard causing the injury as would be expected in the exercise of ordinary care under the circumstances. *Id.*, (quoting *Urie*, 337 U.S. at 179 n. 16). Ordinary care is measured in proportion to the danger to be avoided and the consequence that might reasonably be anticipated. *Id.* A railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect the plaintiff and similarly situated employees. *Id.* at 811 (quoting *Urie*, 337 U.S. at 178). In addition, one court has held that: "When the evidence shows that the railroad customarily does not enforce a safety rule, the jury is entitled to consider whether that custom constituted negligence and whether it caused, in whole or part, the plaintiff's injury." *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 150 (8th Cir.1982) (custom was not to enforce lifting rules for employees engaged in certain function and result was procedure that caused excessive back stress).

**B. Analysis**

 The district court relied on *Gordon v. Raven Systems & Research, Inc.*, 462 A.2d 10 (App.D.C.1983), a wrongful termination action in which the employee was fired for refusing to work in an area where she was exposed to second-hand smoke. The plaintiff had alleged that she was sensitive to tobacco smoke and experienced severe symptoms of eye irritation, nasal congestion, chest tightness, nausea, and headache after being exposed to smoke-filled rooms at work. Indicating that the rights of nonsmokers was a matter for the legislature, the court held that an employer's duty to provide a safe workplace does not include a "duty to adapt [the] workplace to the particular sensitivities of an individual employee." *Id.* at 14.

In choosing to follow *Gordon*, the district court (like the court in *Gordon*) distinguished *Shimp v. New Jersey Bell Telephone Co.*, 145 N.J.Super. 516, 368 A.2d 408 (1976), which held that a common law duty to maintain a safe workplace extended to the dangers of second-hand cigarette smoke. The court in *Gordon* sidestepped the substantive question, and distinguished *Shimp* on the grounds that it was based on a "plethora of scientific studies and affidavits of medical experts" showing that cigarette smoke posed a serious health threat to *all* workers. *Gordon*, 462 A.2d at 15. However, the opinion in *Shimp* actually concluded: "There can be no doubt that the by-products of burning tobacco are toxic and dangerous to the health of smokers and nonsmokers generally and *this plaintiff in particular.*" *Shimp*, 368 A.2d at 526 (emphasis added).

The district court in this case acknowledged that two other courts have found an employer has a common law duty with respect to protecting employees from second-hand cigarette smoke, but declined (without explanation) to follow them. In one case, the Washington Supreme Court explicitly held that an employer's common law duty includes the duty to provide a working environment reasonably free from tobacco smoke. *McCarthy v. Dept. of Soc. & Health Servs.*, 110 Wash.2d 812, 759 P.2d 351 (1988). In another, the plaintiff claimed that exposure to tobacco smoke was causing a severe respiratory reaction

that was affecting his health. The court held that the employer breached the duty to provide a reasonably safe workplace where the employer knew that tobacco smoke was harmful to the health of the plaintiff-employee and the other employees, and the employer had authority, ability, and reasonable means to control the exposure to smoke. *Smith v. W. Elec. Co.,* 643 S.W.2d 10, 37 (1982).

We find that the district court erred in granting summary judgment to CSXT on the grounds that plaintiff failed to present medical evidence of the danger of cigarette smoke to all employees when defendant did not dispute that second-hand smoke is harmful. Plaintiff offered evidence that he was exposed on a nearly daily basis, that his exposure to smoke at work triggered his asthma attacks, that defendant knew about his condition, and that defendant had already acted out of concern for the health of all nonsmokers by adopting a no-smoking ban. While the duty to provide a reasonably safe workplace may not always be breached by the presence of second-hand smoke, we cannot accept the proposition that it can never be breached by an employer's failure to abate second-hand cigarette smoke in the workplace that aggravates a plaintiff's existing lung disease.

Defendant argues for affirmance on the alternative grounds that there are no material questions of fact concerning the implementation and enforcement of its no-smoking policy. This seems to be a claim that it did not breach the duty because it had adopted and enforced a no-smoking policy. There was evidence from defendant's own manager, however, that the rule was not vigorously enforced at the Walbridge terminal and, even when it was, the employer required only that the offending smoker "put out" his cigarette if asked. Defendant also argues that it cannot be liable because the offending smokers were acting outside the scope of their employment. That is, smoking by employees constitutes independent and intentional acts committed in the face of defendant's policy against such behavior. It is not that simple, however. This court has held that a railroad can be liable in negligence under FELA if it "fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct." *Green v. River Terminal Ry. Co.,* 763 F.2d 805, 808 (6th Cir.1985) (assault by fellow employee).

Because the district court did not address these additional arguments and the record has not been developed such that we can determine judgment should be entered as a matter of law, we do not reach the question of whether they may support entry of summary judgment in favor of defendant.

**REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

BATCHELDER, Circuit Judge, Dissent.

I respectfully dissent. The majority holds that the railroad's duty is to provide a reasonably safe place in which to work, and that it is the plaintiff's burden in a FELA case to prove that the railroad breached that duty. With that I certainly agree. But the majority opinion, as I understand it, holds that because the railroad does not deny that second-hand smoke is harmful, the plaintiff has no duty to provide any evidence either of what the level of second-hand smoke was in the areas where plaintiff was exposed to it, or of the level of second-hand smoke which would cause the workplace not to be reasonably safe.

There is no question that FELA imposes on the railroad a duty to provide a reasonably safe place for its employees to

work. In my view, unless the railroad's safety rule prohibiting smoking operates as a matter of law to define a "reasonably safe place to work" as a place with no second-hand smoke—a proposition for which I have found no authority—or, unless a workplace is not reasonably safe if a condition exists therein which adversely affects even one individual employee—a proposition for which I have found no federal court authority—the burden still remains with the plaintiff to demonstrate that the place in which he worked was not reasonably safe for the railroad's employees. Here, the plaintiff was required to show that because of the second-hand smoke, the workplace of which he complains was not reasonably safe for the railroad's employees. I believe the district court correctly concluded that because the plaintiff failed—twice—to provide any evidence whatsoever of the effect of second-hand smoke on human health and safety in general, no genuine issue remained for trial with regard to whether the workplace was reasonably safe for the railroad's employees. In the absence of evidence that the workplace was not reasonably safe for the employees, there is no evidence that the railroad breached its duty to provide a reasonably safe workplace for the employees, an element of negligence on which the majority opinion concedes the plaintiff in an FELA case has the burden of proof. I would affirm the district court's order granting summary judgment to CSX Transportation, Inc.