NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0432n.06

No. 10-6391

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Apr 19, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| NICHOLAS SCOTT SAPP, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT |
| v. | ) | FOR THE MIDDLE DISTRICT |
| | ) | OF TENNESSEE |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MERRITT, ROGERS, Circuit Judges; and POLSTER, District Judge.[*]

**Dan Aaron Polster, District Judge.** Plaintiff-Appellant Nicholas Sapp, a foreman for

Defendant-Appellee CSX Transportation, Inc. ("CSX"), was injured following repair of a CSX

railroad switch. He subsequently filed an action against CSX under the Federal Employers Liability

Act, 45 U.S.C. §§ 51 *et seq.* ("FELA"), asserting claims of negligence *per se* and negligence. Sapp

claimed that he was injured due to CSX's failure to remove vegetation adjacent to its railroad track

in violation of 49 C.F.R. § 213.37(c), and in violation of its duty to provide a reasonably safe

workplace. Following discovery, the district court denied in part Sapp's motion to strike the

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

1

declarations of two railroad experts and granted summary judgment in favor of CSX. It is from these rulings that Sapp timely appealed.

**I.**

On July 25, 2006, Roadmaster Willard Price assigned Sapp and his crew[1] to perform maintenance on the switch from CSX's mainline to the Ozburn-Hessey Storage Company's out-of-service industry track, otherwise known as the old Hoskins track.[2] Sapp parked his truck in the Ozburn-Hessey parking lot adjacent to the old Hoskins track. There, Sapp and his crew loaded their "track jacks" and other tools onto a backhoe to be transported to the work site.

During maintenance, the backhoe backed up over a spike, causing a flat tire. As a result, upon completion of the assignment, Sapp and his crew, carrying the jacks and other tools, returned to the Ozburn-Hessey parking lot via the old Hoskins track. They walked down the middle of the track because the vegetation outside the track was so thick. When they neared the parking lot, Sapp, who was carrying a 55-pound jack, looked up at the 18-wheelers in the parking lot as he was stepping over the rail. There was no vegetation along the track at this particular point. Sapp, nonetheless, tripped over the rail and lurched forward, catching himself from falling completely. That motion was significant enough to cause injury to Sapp's back, requiring surgical repair.

Shortly after the accident, Sapp completed an incident report in which he checked a box indicating that he had a safe place to work. A week after the accident, CSX Manager of Field Investigations Lee Miller and Sapp conducted a recorded interview at the site of the injury. At that

---

[1]Sapp's crewmates were Tim Fan, Tommy Pewitt, and Larry Peacock.

[2]According to Sapp, the switch maintenance required jacking the switch up, dumping rocks underneath it, and using the backhoe to tamp the earth down to achieve the correct elevation.

time, Sapp explained that he was looking up, not down, when he tripped. He admitted that the ground conditions outside the track at that time were pretty good when he tripped over the rail. When asked whether there was anything he could have done to prevent the injury, Sapp responded, "Uh, it's just a freak accident, or just an accident, I mean, maybe pick my feet up, a little bit better, when I stepped over the rail. . . And this never would have happened, but it's just one of those things, you know." (R.34-1 at 41.) When asked if there was something CSX could have done to prevent the injury from happening, he responded, "Probably not, I mean, probably find a lighter jack maybe, or something." (Id.) Yet, he admitted that it was not unusual to carry jacks that distance.

In Plaintiff's Response to Defendant's Statement of Undisputed Facts, Sapp admitted, among other things, that the rail on which he tripped was no higher than any other rail on which he worked in the past, and he could have avoided walking between the rails of the old Hoskins track by either driving his work truck to the area where the tools were found, or walking to the nearby road crossing.

In a deposition of Sapp conducted over four years later, Sapp was asked to describe what happened when he was trying to step over the rail the day he was injured. He responded,

> I had to walk down the middle of the track. It was growed up all the way around it with thistles and briars and limbs. So I walked down the middle of the track and I just – I don't know, stepped over it. I looked up because I was stepping over to make sure which one of the 18-wheelers I needed to go through and the trailers, and just tripped up a little.

(R. 34-1 at 5.)

Sapp filed a complaint alleging that CSX caused his injury by breaching both its statutory and common-law duty to remove vegetation adjacent to the old Hoskins track. Specifically, Sapp contended that CSX had a statutory duty, under track safety standard 49 C.F.R. § 213.37, to control the vegetation immediately adjacent to the track – and that its failure to do so constituted a breach

3

of that duty, or negligence *per se*. Sapp also contended that CSX had a common-law duty to maintain a reasonably safe workplace, and that its failure to control the vegetation adjacent to the old Hoskins track constituted a breach of that duty since it forced him to walk down the middle of the track – which, he contends, inherently poses a trip hazard. If he hadn't been forced to walk down the track, the injury would not have occurred. Thus, the failure to maintain the vegetation caused his injury.

Following discovery, CSX filed a motion for summary judgment,[3] while Sapp filed a motion for partial summary judgment and a motion to strike the declarations of CSX witnesses Mark Gennette, Roy Dean, and Edward English. In the motion for summary judgment, CSX contended that the federal vegetation regulation did not apply to out-of-service industry track such as the old Hoskins track; CSX did not owe Sapp a general duty to maintain vegetation alongside out-of-service industry track; and the vegetation did not cause Sapp to trip. In the motion for partial summary judgment, Sapp contended that his injury was caused by CSX's failure to remove vegetation adjacent to its track, in violation of 49 C.F.R. § 213.37(c) and CSX's duty to maintain a reasonably safe workplace. Sapp also asked the court to strike as untimely the declaration of Mark Gennette regarding ownership of the old Hoskins track. Sapp asked the court to strike the declarations of Roy Dean and Edward English as they improperly relied upon Gennette's declarations, contained improper interpretations of Federal Railway Administration ("FRA") regulations, constituted advocacy reports, and did not qualify as expert opinions.

The district court granted Sapp's motion to strike the declaration of Mark Gennette, and it granted Sapp's motion to strike only those portions of the Dean and English declarations that relied

---

[3]CSX also filed a motion for permission to respond to the issue of mitigation of damages. The ruling on this issue is not before us on appeal.

on Gennette's declarations. The district court also granted summary judgment in favor of CSX. Sapp challenges these rulings on appeal.

## II.

The district court's ruling on a motion to strike is reviewed on appeal for an abuse of discretion. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003).

We review the district court's ruling granting CSX's summary judgment motion de novo. *Cockrel v. Shelby Cnty. Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir. 2001).

Section 51 of FELA imposes liability upon any common carrier engaged in interstate commerce for:

> damages to any person suffering injury while he is employed by such carrier . . . and for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

To make a prima facie showing under FELA, a plaintiff must sufficiently demonstrate that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of the defendant's interstate transportation business; (3) the defendant was negligent; and (4) the defendant's negligence played some part in causing the injury for which the plaintiff seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). A plaintiff must "present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996) (overruled on other grounds). While CSX did not contest the first two elements of

5

plaintiff's prima facie case, it contended that Sapp could not show that CSX was negligent or that its conduct caused his injury.

"Negligence under FELA is a question of federal law, which generally turns on common law principles of negligence and injury." *Wilhelm v. CSX Transp., Inc.*, 65 F. App'x 973, 976 (6th Cir. 2003). Thus, a FELA plaintiff must prove "the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990) (citation omitted). Under FELA, a relaxed standard of causation applies, under which the test is simply "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Wilhelm*, 65 F. App'x at 976 (inner quotation omitted). The relaxed causation standard does not affect the plaintiff's obligation to prove the defendant was in fact negligent. *Van Gorder*, 509 F.3d at 269 (citation omitted). Furthermore, a plaintiff may not recover under FELA simply because he was injured in the course of his employment on the railroad. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) ("FELA does not make the employer the insurer of the safety of [its] employees while they are on duty. The basis of [its] liability is [its] negligence, not the fact that injuries occur.").

> Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace; this does not mean that a railroad has the duty to eliminate all workplace dangers, but only the "duty of exercising reasonable care to that end."
>
> A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. That is, a railroad breaches its duty when it "'knew, or by the exercise of due care should have known' that prevalent standards of conduct were inadequate to protect [the plaintiff] and similarly situated employees." A railroad must act reasonably and use ordinary care to protect its employees.

6

*Van Gorder*, 509 F.3d at 269-70.

## III.

### A.    Negligence Per Se Claim

Sapp argues that CSX had a statutory duty under 49 C.F.R. § 213.37 to remove the vegetation alongside the old Hoskins track, CSX's breach of that duty constituted negligence *per se*, and the breach caused his injury.  Sapp contends that the track is part of the "general railroad system of transportation" subject to the Track Safety Standards set forth in Chapter 213 of Title 49 of the U.S. Code, and specifically 49 U.S.C. § 213.37(c) (otherwise known as "the vegetation regulation"). Sapp also argues that the district court incorrectly concluded that the old Hoskins track was not part of the general railroad system and that the district court ignored his evidence that the track was in service at the time of his injury.

The district court held that, while Sapp was undisputedly injured on industry track, 49 U.S.C. § 213.37 applies only to the general railroad system of transportation, not to industry track red-tagged as out-of-service such as the old Hoskins track.  Since there was no statutory duty to maintain the vegetation alongside the old Hoskins track, Sapp could not show that the failure to maintain that vegetation constituted negligence *per se*.  We agree.

Under the pertinent provision of § 213.37, "Vegetation on railroad property which is on or immediately adjacent to roadbed shall be controlled so that it does not . . . [i]nterfere with railroad employees performing normal trackside duties." 49 C.F.R. § 213.37(c).  On its face, this regulation appears to create a statutory duty on the part of CSX to control vegetation alongside the old Hoskins track.  However, a review of the statutes, regulations, and FRA policy indicates otherwise.

7

The Federal Railroad Safety Act ("FRSA") authorizes the Secretary of Transportation to prescribe regulations and to issue orders for every area of "railroad safety supplementing laws and regulations" in effect at the time of the FRSA's enactment. 49 U.S.C. § 20103(a). Under delegation from the Secretary, the FRA proposes and enforces the federal railroad safety statutes. 49 C.F.R. pt. 209, App. A. Regulations implementing the statutes are located at Chapters 213 and 236 of Title 49 of the Code of Federal Regulations. *Id.* The regulations prescribe "minimum safety requirements for railroad track that is part of the general railroad system of transportation." 49 C.F.R. § 213.1. They expressly do not apply to railroad track "[l]ocated inside an installation which is not part of the general railroad system of transportation." 49 C.F.R. § 213.3(b)(1).

Although the FRA has broad jurisdiction over anything that can be construed as a railroad (with the exception of self-contained urban rapid transit systems), it has chosen, for practical purposes, to regulate "something less than the total universe of railroads." 49 C.F.R. pt. 209, App. A.

> For example, all of FRA's regulations exclude from their reach railroads whose entire operations are confined to an industrial installation (i.e., "plant railroads"), such as those in steel mills that do not go beyond the plant's boundaries. . . . Other regulations exclude not only plant railroads but all other railroads that are not operated as a part of, or over the lines of, the general railroad system of transportation. . . .
> By "general railroad system of transportation," FRA refers to the network of standard gage track over which goods may be transported through the nation and passengers may travel between cities and within metropolitan and suburban areas. Much of this network is interconnected, so that a rail vehicle can travel across the nation without leaving the system. However, mere physical connection to the system does not bring the trackage within it. For example, *trackage within an industrial installation that is connected to the network only by a switch for the receipt of shipments over the system is not a part of the system*.

Id. (citations omitted) (emphasis added). On the other hand:

> even where a railroad operates outside the general system, other railroads that are definitely part of that system may have occasion to enter the first railroad's property (e.g., a major railroad goes into a chemical or auto plant to pick up or set out cars). In such cases, *the railroad that is part of the general system remains part of that system while inside the installation; thus, all of its activities are covered by FRA's regulations during that period*.

Id. (emphasis added). Since it is undisputed that the old Hoskins track is industry track, and there is no evidence in the record that a general system railroad was using the track for the movement of freight, the district court correctly concluded that the vegetation statute did not cover that track.

Although Sapp argues that the district court ignored evidence showing that the track was in service at the time of his injury, the record shows otherwise. The district court discussed all of Sapp's evidence and found that, although there was evidence that employees used the old Hoskins track to access system track for maintenance purposes and for periodically tying up equipment, Sapp failed to show that the old Hoskins track was in service for receipt of freight at the time of his injury.

Sapp argues that the FRA's 1997 Proposed Track Safety Standard Rules support his proposed extension of the vegetation regulation to the old Hoskins track. To the contrary, the proposed rules support the lower court's interpretation of the vegetation regulation.

> FRA has elected not to exercise jurisdiction over the safety of railroads that conduct their operations exclusively within an industrial or military installation. Such operations have not demonstrated the same degree and frequency of track problems found on tracks in the general system which are subject to heavier tonnages and more frequent use. Nevertheless, FRA recognizes its responsibility for the safety of railroad employees and operations inside such facilities where a general system railroad provides service on the property, *either by picking up and placing cars for transportation in interstate commerce or by switching for the plant*. . . .

> The applicability of section of the current Track Safety Standards (§213.3) excludes track "located inside an installation which is not part of the general railroad system of transportation." This broad statement implies that the track standards do not apply anywhere inside a plant, regardless of who operates there or the type of operations that occur on the plant track. However, § 213.3 must be read in conjunction with 49

9

CFR Part 209, Appendix A, which explains that any plant railroad trackage over which a general system railroad operates becomes subject to FRA regulations. *With the entrance of a general system railroad*, the plant loses its insularity.

62 Fed. Reg. 36138, 36142 (emphasis added). Also, the Safety Advisory Committee's Track Working Group did not propose amending the regulation that excludes plant tracks from the federal safety regulations, by referencing Appendix A of Part 209 in that regulation, because it:

> could have the effect of making all provisions of Part 213 enforceable against thousands of plant owners, at least to the extent over which general system railroads operate within plant borders. *Such a result would be more far-reaching than intended by the Rail Safety Advisory Committee.* Even while FRA declines to apply Part 213 to plant railroads, the agency continues to have safety jurisdiction over those railroads and may invoke its statutory emergency authority if it deems it necessary in order to safeguard anyone from the hazard of death or personal injury.

Id. at 36145 (emphasis added).

Sapp argues that the old Hoskins track became part of the general railroad system because, just prior to his injury, his boss (Price) poisoned the vegetation alongside the track. Price testified, however, that the track was ineligible for use by CSX because it had been red-tagged as out-of-service, and the reason he poisoned the vegetation "was to keep it from growing completely up, to keep it to where we could keep it cleared off to where we could use it without having to cut trees off of it *in years to come*" and "to provide a safe work environment *should we decide to use the track*." (R. 34-2 at 2-3 (emphases added).) There is nothing in the federal regulations or the FRA's policy statement that supports including the old Hoskins track within the confines of § 213.37 just because a CSX employee poisons the vegetation because of the possibility that CSX might use the track in the future.

Finally, Sapp argues that the district court abused its discretion when it struck some, but not all, of the declarations of railroad experts Roy Dean and Edward English – and then relied on their

10

unexcluded declarations to support its summary judgment decision. CSX had filed the declaration of Mark Gennette, CSX Director of Contract Management, along with three documents, to support its summary judgment motion. Gennette declared that, in early 2003, CSX's duty to maintain the industry track ended when Ozburn-Hessey failed to renew a contract that had required CSX to maintain the first 157 feet of track to Ozburn-Hessey's facilities. The district court granted Sapp's motion to strike the declaration and attachments as untimely under Fed. R. Civ. P. 26(a)(1) and its Case Management Order. The district court then granted Sapp's motion to strike the declarations of railroad experts Dean and English only to the extent that they relied upon Gennette's declarations and documents. The question is whether the district court abused its discretion by declining to exclude the remainder of Dean's and English's declarations, upon which it purportedly relied. Sapp's argument lacks merit.

Since the district court did not rely on the balance of the declarations of Dean and English, we need not decide whether it was an abuse of discretion not to strike them. The district court first concluded that the old Hoskins track was not a part of the railroad system to which the vegetation regulation applied based on a plain reading of the regulatory scheme. The district court next concluded that the evidence conclusively established that the old Hoskins track was not a part of the general railroad system, despite Sapp's contention that the track was in service, because Sapp's boss testified that the track had been red-tagged as out-of-service at the time of Sapp's injury and Sapp failed to present any expert evidence establishing that the track was considered part of the general railroad system.

Because a plain reading of the regulatory scheme shows that the old Hoskins track was not a part of the general railroad system of transportation to which the vegetation regulation applies, and

there is no evidence that a system railroad was using the track to pick up or drop off freight at the time of Sapp's injury, the district court properly granted summary judgment on the negligence *per se* claim.

### B. Negligence Claim

Sapp next argues that CSX's failure to maintain the vegetation alongside the old Hoskins track violated its duty under FELA to provide a reasonably safe workplace for its employees. According to Sapp, CSX owed a duty to remove the vegetation from alongside the old Hoskins track because it was foreseeable that its employees would use the same parking lot Sapp used, and walk down the middle of the same track where Sapp walked, to perform maintenance on CSX track near the Ozburn-Hessey switch. Given the foreseeability of this oft-used access to a worksite, and assuming one is less likely to trip on a flat surface than walking down the middle of train tracks, CSX had an obligation to control the vegetation.

The district court rejected Sapp's argument that CSX had a general duty under FELA to maintain the vegetation on the old Hoskins track. Furthermore, even if Sapp could establish that CSX owed, and breached, a general duty to remove the vegetation, the district court concluded that the negligence claim would still fail because Sapp failed to show that the breach caused his injury.

Sapp again argues that the district court ignored the evidence (specifically, the deposition testimony of Willard Price, track inspector Mike Dimitre, and backhoe operator Larry Peacock) he relied upon to show that CSX had a general duty to remove the vegetation. In fact, the record shows that the court expressly discussed Sapp's evidence but considered it insufficient to establish a duty.

Despite Sapp's characterization of Price's testimony, Price made it quite clear at deposition that CSX had a statutory duty to control the vegetation on the system track, but that it had no duty

12

to control the vegetation alongside the old Hoskins track, which he acknowledged was industry track that had been taken out of service. Price testified that CSX would have the duty to control that vegetation if the track was ever designated for use in the future, which was the only reason he poisoned the vegetation in that area. Price also testified that it was foreseeable that workers would park in the Ozburn-Hessey lot and walk up the old Hoskins track to work on system track, but there was other parking available.

Mike Dimitre also testified that the track had been red-tagged as out of service at the time Sapp was injured. Dimitre testified that he parked in the Ozburn-Hessey lot and used the old Hoskins track to inspect system track; he would walk down the middle of the track due to vegetation alongside the track; he did not think it was unsafe to walk down the track; there's nothing in the safety rules about walking down the middle of track; he did not think that walking in the middle of the track presented a trip hazard; and he thought it would be a good policy to remove the vegetation alongside the Hoskins track if an employee could not walk down the middle of the track. He also testified that he thought it was a good idea to clear vegetation adjacent to tracks and it would be a good idea to clear a towpath to prevent workers from walking down the middle of the track.

Larry Peacock agreed that there should not be vegetation along the rail as it posed a safety hazard, and deemed CSX responsible for maintaining a towpath for workers to walk safely along the rails. He agreed that the rails and wooden ties between the rails presented a trip hazard, but testified that it was not unusual for a worker to walk down the center of the track.

This testimony is, at best, equivocal in establishing a duty on the part of CSX to control vegetation alongside industry track that has been designated out of service. While it may be "a good idea" to remove that vegetation, this does not rise to the level of a legal duty – particularly where

13

there is no evidence that the track was defective or provided any particular danger to workers walking on it.

Sapp argues that CSX owed him a duty to remove the vegetation from the sidetrack if it was foreseeable that a FELA-covered worker was going to be on the third-party's property. In support of this position, he cites *Shenker v. Baltimore & Ohio R. Co.*, 374 U.S. 1 (1963), *Payne v. Baltimore and Ohio R.R. Co.*, 309 F.2d 546 (6th Cir. 1962), and *Empey v. Grand Trunk W.R.R.*, 869 F.2d 293 (6th Cir. 1989).

In *Empey*, a railroad employee, who was on layover awaiting his next assignment, injured his back when he slipped on water while exiting the shower in his hotel room. Evidence showed that a faulty latch on the shower door allowed water to escape the shower stall and accumulate on the floor (i.e., negligence on the part of the hotel). Following the presentation of evidence at trial, the railroad filed a motion for directed verdict. The trial court denied the motion, finding that Empey was within the scope of his employment when injured, and that the hotel's negligence could be imputed to the railroad. On appeal, this court affirmed. Because there was a statute requiring the railroad to provide rooms for its off-duty training crew, the railroad had a contract with the hotel to board its employees who were on layover, and the employer would not have reimbursed him for the expenses of staying at another facility, the court found that the injury occurred within the scope of his employment. More importantly, the court next concluded that the negligence of the hotel could be imputed to the railroad because:

> a railroad has the non-delegable duty to provide an employee with a safe place to work. This is so despite the fact that it may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the

14

existence of an unsafe condition brought about through the act of another and without fault on the railroad's part.

869 F.2d at 296. This particular ruling relies upon the *Payne* and *Shenker* decisions.

There is no question that Sapp was injured within the scope of his employment. The only question is whether Ozburn-Hessey's negligence can be imputed to CSX. Sapp has made no allegation, let alone provided any evidence, that third-party Ozburn-Hessey was negligent for failing to maintain the vegetation along its sidetrack. Thus, there is no negligence on the part of Ozburn-Hessey to impute to CSX. *See also Shenker*, 374 U.S. at 2-3 (1963) (injury to railroad employee, caused by defective door of third party where employee was required to work, imputed to railroad); *Payne*, 309 F.2d at 549-50 (death of railroad employee was caused by third party's negligence in using track to dump ashes, causing the accident and imputing liability to the railroad); *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 453 (6th Cir. 2001) (in a Jones Act case, negligence of third-party training center may be imputed to riverboat casino when riverboat deckhand, who was required to obtain training at third-party facility, slipped on ice in third-party's parking lot). In short, these cases do not provide a basis for finding negligence on the part of CSX.

Even if Sapp could establish such a duty, we agree with the district court that Sapp failed to show that a breach of that duty caused his injury. Sapp's position is that, but for the excessive vegetation alongside the old Hoskins track, he would not have been forced to walk down the middle of the track, which is inherently dangerous, and would not have injured himself. He argues that the district court's interpretation of the FELA causation standard was too restrictive.

Sapp is correct in asserting that a relaxed standard of causation applies under FELA. *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2636 (2011) (citing *Consol. Rail Corp. v. Gottshall*, 512

15

U.S. 532, 542 (1994)); *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 433 (6th Cir. 2003). Under FELA, the plaintiff must provide sufficient evidence to show that "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R. Co.*, 352 U.S. 500, 506 (1957). In recently affirming the *Rogers* test in *McBride*, the Supreme Court noted that if negligence is proved, "the carrier is answerable in damages even if 'the extent of the [injury] or the manner in which it occurred' was not '[p]robable' or 'foreseeable.'" *McBride*, 131 S. Ct. at 2643 (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 120-21 (1963)). *But see McBride*, 131 S. Ct. at 2645 (Roberts, C.J., dissenting) (noting that the majority's test is simply "but for" causation and creates a boundless theory of liability). However, we have held that the relaxed causation standard does not affect the employee's obligation to prove that the employer was in fact negligent, and the duty to provide a reasonably safe workplace does not mean that a railroad has the duty to eliminate all workplace dangers. *Van Gorder*, 509 F.3d at 269.

Sapp cites *Richards v. Consol. Rail Corp* in support of his position. In *Richards*, a conductor brought an action against the railroad for back injuries he sustained when he fell while inspecting the train to determine the cause for the train unexpectedly braking. *Richards*, 330 F.3d at 431. Once the court found that the conductor provided sufficient evidence of a defective control valve, the court then decided that the focus should be on whether a reasonable jury could find that the plaintiff's injury "was within the risk created by" the defect. *Id.* at 437. If, as a result of a defect, a plaintiff was required to take certain actions during which he was injured, the issue of causation should go to the jury. *Id.*

In a more recent case, *Szekeres v. CSX Transp., Inc.*, we concluded that the district court improperly granted summary judgment on the plaintiff's negligence claim. 617 F.3d 424, 425 (6th

16

Cir. 2010). The plaintiff was injured when he walked up a muddy embankment to privately relieve himself because the train restroom was unsanitary. *Id.* We held that the plaintiff provided a sufficient factual basis for a reasonable jury to conclude that the injury "was within the risk created by the unsanitary toilet facility." *Id.* at 430 (internal quotations omitted). An expert stated in an affidavit that railroad employees typically "walk[] up the incline to seek privacy to relieve [themselves]" when other "toilet facilities are unavailable." *Id.* The court reasoned that the plaintiff slipped from accumulated mud on his boots from climbing the embankment, creating a "direct tie between his inability to use the onboard toilet facility and his accident." *Id.* The court also agreed with the plaintiff that whether "mud is recognized as a slipping hazard in the railroad industry" was a triable issue of material fact. *Id.* at 430-31.

*Richards* and *Szekeres* are distinguishable from the instant case for several reasons. First, Sapp has shown no defect in the track or any hazard that caused him to fall. In fact, his testimony is that the condition of the ground at the site of the injury was "pretty good"; he was looking up, not down, when he fell; he could have prevented the fall by lifting his foot a little higher when stepping over the track; and he stated that the only thing CSX could have done to prevent the accident was maybe give him a lighter jack to carry. Second, there is no evidence that walking down a train track is inherently dangerous. Walking on track is something railroad maintenance workers do every day, and Price testified that the main reason for controlling vegetation along system tracks was so that workers could avoid getting hit by moving trains. There had been no freight-moving trains on the old Hoskins track for years. Third, Sapp was not required to park in the Ozburn-Hessey parking lot and use the old Hoskins track to access the system track for maintenance. Thus, even with the

17

vegetation alongside the out-of-service track, Sapp's stumble and subsequent injury were not within the risk created by CSX's failure to maintain the vegetation.

For these reasons, we affirm.